OPINION OF THE COURT
 

 Ciparick, J.
 

 In this CPLR article 78 proceeding, petitioner seeks reinstatement to his positions of Director of Psychology Service and Associate Director of Rehabilitation Medicine at Goldwater Memorial Hospital on the ground that his March 1988 discharge violated his rights of free speech, free association and access to the courts. At issue on this appeal is whether respondents’ determination to discharge petitioner and not consider his request for reinstatement abridged petitioner’s constitutional rights.
 

 In 1970, petitioner became the Director of Psychology Service at Goldwater Memorial Hospital (Goldwater), a facility for disabled and chronically ill individuals owned and operated by respondent New York City Health and Hospitals Corporation (HHC). As of January 1, 1988, petitioner also held the position of Associate Director of Rehabilitation Medicine. Petitioner served at Goldwater under an Affiliation Contract between New York University Medical Center (NYU) and
 
 *143
 
 HHC, the successor-in-interest to the original contract signatory, the City of New York, pursuant to which NYU provided professional services and medical and support personnel for the delivery of health care.
 

 Throughout much of his tenure at Goldwater, petitioner was a member and officer of the not-for-profit corporation, Friends of Goldwater Hospital, Inc. (Friends), founded in 1975 to advance the causes of Goldwater, its patients and its staff members.
 

 In 1987, when petitioner was president of Friends, HHC demanded a financial and compliance audit of Friends under a newly revised operational procedure requiring auxiliaries to account for patient care revenues. While petitioner, in his capacity as president, ultimately turned Friends’s books and records over to HHC, he also authorized a lawsuit on behalf of Friends against HHC challenging its authority to conduct the audit and seeking to enjoin the audit. Friends instituted an action for declaratory and injunctive relief against HHC in Supreme Court, while investigations of the financial practices of Friends were proceeding under the auspices of both HHC and the Attorney-General’s Medicaid Fraud Control Unit.
 

 According to HHC, its investigations of the financial records of Friends revealed evidence of improper loans to Goldwater employees, expenditures for the personal benefit of such employees and the absence of documentation detailing any benefits to Goldwater patients. Based on the existence of these investigations, respondent HHC President Jo Ivey Boufford, pursuant to her authority under section 5.01 (b)
 
 [1]
 
 of the Affiliation Contract, requested that NYU remove petitioner from Goldwater.
 

 In response, NYU requested that HHC defer any action against petitioner until the investigations by HHC and the Attorney-General’s office concluded. Respondent Boufford rejected NYU’s suggestion, reiterating her previous request that petitioner be removed forthwith.
 

 Petitioner was subsequently discharged. Based on a representation from the Attorney-General’s Medicaid Fraud Control Unit that petitioner was not the target of an investigation
 

 
 *144
 
 and was fully cooperative, NYU sought petitioner’s reinstatement by HHC. By letter directed to NYU respondent Boufford denied reinstatement, stating, in pertinent part,
 

 "Friends of Goldwater [has] brought a lawsuit against HHC, and questions about [petitioner’s] conduct and status have been raised in connection with that lawsuit. Until issues are fully and finally resolved, I do not see how HHC can consider your request that [petitioner] be reinstated.”
 

 This article 78 proceeding ensued.
 

 Supreme Court granted the petition to the extent of finding that although petitioner was an at-will employee, he demonstrated that his removal from Goldwater was made in bad faith on the ground that it was either based upon an audit of Friends which HHC was unauthorized to conduct or was an attempt to interfere with his right of association.
 
 [2]
 
 Supreme Court remanded the matter to HHC for a hearing on "why [petitioner’s] continued employment * * * was not in the best interests of the public”
 
 (sic).
 

 The Appellate Division reversed, finding no hearing was required as petitioner was simply an at-will employee who failed to establish that his termination violated any constitutional, statutory or contractual provision which would warrant a pretermination hearing or even a statement of reasons.
 

 Petitioner’s appeal is before this Court as a matter of right (CPLR 5601 [b]).
 

 Petitioner points to the letters from respondent Boufford to NYU requesting his removal as a result of the investigation of Friends and denying reinstatement based on the pendency of the Friends lawsuit against HHC as proof that respondents’ conduct abridged his constitutional rights to free speech, to freely associate and to petition. Respondents counter that petitioner, an at-will employee, failed to establish that his removal violated any constitutional, statutory or contractual provision. Further, respondents argue that petitioner has not demonstrated his entitlement to a hearing as an affiliate employee.
 

 
 *145
 
 The rights of free speech and free association flowing from the First Amendment are protected liberty interests and the right to petition and access the courts is recognized as a liberty and property interest under the Fourteenth Amendment
 
 (Mt. Healthy City Bd. of Educ. v Doyle,
 
 429 US 274, 283;
 
 see also, Pickering v Board of Educ.,
 
 391 US 563 [First Amendment rights attach to public employee’s speech on matters of public concern];
 
 Ryland v Shapiro,
 
 708 F2d 967, 972 [interference with right of access to courts grounded in the Due Process Clause of the Constitution and the First and Fourteenth Amendments gives rise to a 42 USC § 1983 claim]).
 

 No employee in the public sector employed for a fixed term or an indefinite period can be discharged for the exercise of constitutionally protected rights or activities
 
 (Matter of Bergamini v Manhattan & Bronx Surface Tr. Operating Auth.,
 
 62 NY2d 897, 898;
 
 Matter of State Div. of Human Rights [Cottongim] v County of Onondaga Sheriff’s Dept.
 
 71 NY2d 623, 630). The rights of a public employee, however, can be restrained when their exercise interferes with the government-employer’s functions
 
 (Waters v Churchill,
 
 511 US —, —, 114 S Ct 1878, 1886-1888 [government agency may discharge employee for disruptive speech provided it had reasonable basis for belief that speech was disruptive, or involved matter outside purview of First Amendment protection];
 
 Connick v Myers,
 
 461 US 138,150-151;
 
 Pickering,
 
 391 US 563, 568,
 
 supra).
 

 An aggrieved employee bears the burden of producing legally admissible evidence demonstrating that the dismissal was for constitutionally impermissible reasons, violative of a statutory proscription or contrary to an express contractual provision
 
 (Matter of Bergstein v Board of Educ.,
 
 34 NY2d 318, 323). Petitioner’s inability to satisfy his burden of demonstrating that his discharge was constitutionally impermissible defeats his petition and any claim of a right to a hearing.
 

 As a public employer, respondent HHC is under no constitutional or legal obligation to retain an employee whose conduct the public employer deems disruptive of its operation
 
 (see, Waters,
 
 511 US, at —, —, 114 S Ct, at 1887, 1891,
 
 supra
 
 ["As a matter of law, (the) potential disruptiveness (to the government-employer) was enough to outweigh whatever First Amendment value the speech might have had”];
 
 Connick,
 
 461 US 138, 150-151,
 
 supra; Pickering,
 
 391 US 563, 568,
 
 supra).
 
 Thus, when petitioner’s constitutional rights are balanced against respondents’ interests in effectively and efficiently discharging its mandate, respondents’ interests must prevail.
 

 
 *146
 
 HHC had no objection to petitioner’s membership in and leadership of Friends, until Friends came under investigation for financial irregularities. Indeed, petitioner voluntarily resigned from his presidency of Friends shortly after he made Friends’s financial records available to HHC and authorized institution of the suit to enjoin HHC from interfering with Friends. Juxtaposed against these facts, petitioner’s reliance on respondent Boufford’s ambiguous letter denying reinstatement to satisfy his burden of establishing a violation of his constitutional rights is untenable. In this regard, petitioner’s attempts to characterize his affiliation with Friends as protected association and to elevate the Friends lawsuit to the level of protected speech or a petition to enforce an underlying constitutional right are unavailing
 
 (see, James v Board of Educ.,
 
 37 NY2d 891;
 
 see also, Matter of Johnson v Katz,
 
 68 NY2d 649).
 

 That petitioner’s association with Friends and his official action on behalf of Friends, including commencement of the Supreme Court action, became the focus of respondent Boufford’s decision to terminate petitioner does not translate into deprivation of petitioner’s constitutional rights not only because his employment was terminable at will
 
 (Parker v Borock,
 
 5 NY2d 156, 159;
 
 Murphy v American Home Prods. Corp.,
 
 58 NY2d 293, 300-301), but where the express terms of his employment with HHC subject him to removal whenever his continued employment was no longer in HHC’s best interests
 
 (see, Weiner v McGraw-Hill, Inc.,
 
 57 NY2d 458). The allegations of financial improprieties against an organization in which petitioner, an HHC employee, held the post of president can justify respondents’ decision to remove him as measured against the best interests of HHC
 
 (cf., Waters,
 
 511 US, at —, —, 114 S Ct, at 1887, 1891,
 
 supra).
 

 [3]
 

 The untoward consequences respondent Boufford perceived to flow from petitioner’s association with Friends, which publicly compromised the integrity of both Goldwater and HHC, motivated the termination decision. Petitioner had no right to interfere with respondents’ interests as they related to an organization whose stated purpose is to promote Goldwater’s goodwill. Respondents’ consequent determination not to reinstate petitioner based on questions raised in the Supreme Court action regarding his
 
 *147
 
 conduct in connection with Friends, therefore, cannot be characterized as impermissibly retaliatory in nature.
 

 Petitioner’s claim that he was entitled to a hearing is equally specious. Notwithstanding the instant challenge, the record is devoid of any evidence that petitioner availed himself of a formal appeal of respondents’ removal determination, although section 5.01 (b) provides for an appeal of the termination decision. Accordingly, the termination must stand.
 

 The order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Section 5.01 (b) provides, in relevant part, that "if the individual’s continued employment at [Goldwater] shall be considered by the President of [HHC] not to be in the best interest of [HHC], then the President * * *, may request, in writing, that the Affiliate remove such employee * * * and, upon such request the Affiliate shall forthwith remove such employee”.
 

 [2]
 

 . Supreme Court resolved Friends’s suit against HHC by declaring that Friends was an independent entity, unaffiliated with Goldwater such that HHC had no right to audit or confiscate moneys from Friends, notwithstanding Operating Procedure 10-20 adopted by HHC in July 1987 to,
 
 inter alla,
 
 regulate financial reporting of hospital auxiliaries. In the order, Supreme Court also permanently enjoined HHC from interfering with Friends’s operation, officers and directors.
 

 [3]
 

 . We note that respondent Boufford’s determination to discharge petitioner is consistent with the broad discretionary authority vested in HHC’s President under section 5.01 (b) of the Affiliation Contract.