■ In the Matter of TIMOTHY MACFARLANE, Petitioner, v VILLAGE OF SCOTIA, Respondent. [659 NYS2d 351] —White, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Schenectady County) to review a determination of respondent which found petitioner guilty of misconduct and suspended him from his employment.

The implementation of the 911 emergency call system in Schenectady County had been the subject of heated public debate and continuing press coverage, which included publication of numerous letters to the editor authored by various union leaders, including petitioner, which were in opposition to the position taken by respondent's Mayor and Police Chief. Accordingly, respondent's Board of Trustees (hereinafter the Board) was considering several dispatch plans; one favored by the Scotia Police Benevolent Association (hereinafter PBA) called for respondent's Police Department to handle the 911 calls, while the plan the Board favored utilized the Town of Glenville's civilian dispatchers. On the eve of the Board's meeting at which it was to select a dispatch plan, a letter written by petitioner, the vice-president of the PBA, was delivered to each of the four trustees illuminating what petitioner perceived to be the deficiencies in the plan favored by the Board. Included in the letter was the following: "It is the Chief's letter to the editor I find more interesting. As president of the PBA when Paul Boyarin came to Scotia and current VP, I have made it very clear to our members that Chief Boyarin is a provisional Chief and as such is subject to the whim and pleasure of the Mayor. Until he becomes permanent (10/95?) and can speak freely he is a tool of the Mayor. With this in mind we have not said anything to, for, or against the Chief, and have kept him out of our comments about plan three etc. I was very surprised (as were many people I talked to) that the Chief of Police would jump into this political pot to publicly shaft his men and the P.B.A. and suck up to the Mayor in the same article. This was uncalled for and did harm to the Department and the Chief's image."

While critical of the Chief of Police and the Mayor, there was, notably, no public discredit of those officials or their office. Rather, it was the Mayor, a recipient of the letter, who publicized its contents. Shortly thereafter respondent, pursu-

ant to Civil Service Law § 75 (1), served a notice and statement of charges upon petitioner alleging 12 incidents of misconduct predicated upon the contents of his letter. The Board designated a Hearing Officer and, following an evidentiary hearing, she dismissed charge No. 7 and those portions of the other charges pertaining to the Mayor, but found petitioner guilty of the remaining charges. In light of her findings, she recommended that petitioner be suspended without pay for two weeks. The Board, adopting the Hearing Officer's findings and recommendation, suspended petitioner without pay for 10 working days. This CPLR article 78 proceeding ensued.

Petitioner initially argues that he is entitled to 1st Amendment protection because his letter addresses a matter of public concern. We agree that petitioner spoke, as a citizen, upon a matter of public concern; nevertheless, respondent can justify its restriction of his speech if it can show that its interest in promoting the efficiency of the public services it performs through its employees outweighed petitioner's interest in commenting on a matter of public concern (*see*, *United States v National Treasury Empls. Union*, 513 US 454; *Pickering v Board of Educ.*, 391 US 563, 568; *Matter of Zaretsky v New York City Health & Hosps. Corp.*, 84 NY2d 140, 145). Because the government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs, its interest in achieving its goals as effectively and efficiently as possible is a significant one (*see*, *Waters v Churchill*, 511 US 661, 675; *Arnett v Kennedy*, 416 US 134, 168 [Powell, J., concurring]).

In balancing the competing interest, the overarching factor forming our determination is that a police force is a quasi-military organization demanding strict discipline (*see*, *Matter of Laspisa v Mahoney*, 198 AD2d 279). The proof shows that respondent's police force is a small one which mandates a close working relationship between its Chief of Police and officers if it is to operate efficiently and effectively. It is self-evident that this relationship was imperiled by the dissemination of petitioner's letter to the Board. Accordingly, we find that respondent's interests outweighed petitioner's interests and conclude that he is not entitled to the protection afforded by the 1st Amendment.

Petitioner next argues that the use of such terms as "discourteous", "inconsiderate", "harsh and insolent language", "disrespect and incivility" and "abusive language and derogatory remarks" in the Rules of Conduct of the Police Department renders the regulations unconstitutionally vague. Again,

petitioner's argument fails because of his status as a government employee (see, *Waters v Churchill, supra*, at 673-674). For such employees, restrictions on their behavior are constitutionally sufficient against the charge of vagueness if an ordinary person exercising ordinary common sense can sufficiently understand and comply with them (see, *Arnett v Kennedy, supra*, at 159; *Civil Serv. Commn. v National Assn. of Letter Carriers*, 413 US 548, 578-579). In our view, the challenged rules meet this constitutional standard.

Addressing petitioner's substantial evidence argument, we must determine if the record contains "such relevant proof as a reasonable mind might accept as adequate to support a conclusion as ultimate fact" (*300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 180). Applying this standard, we find that charge No. 2 lacks evidentiary support as there is no proof that petitioner willfully or intentionally disregarded a lawful order (Black's Law Dictionary 1428 [6th ed 1990]). We reach the same conclusion with respect to charges Nos. 10 and 11 since the Chief of Police testified that a police officer would have no way of knowing when he or she was supposed to check with his superior before writing a letter to the Board. As to the remaining charges, we conclude that they are supported by substantial evidence since the letter's intemperate language easily falls within the proscribed conduct set forth in the charges. To summarize, we shall confirm the finding of guilt relative to charge Nos. 1, 3, 4, 5, 6, 8, 9 and 12 and annul such finding as to charge Nos. 2, 10 and 11, and remit for reconsideration of the penalty. We do, however, note that the penalty imposed upon petitioner was unduly harsh. In light of his 16 years of exemplary, unblemished public service and, mindful that the offending conduct at issue did not flow from petitioner's performance of his police responsibilities but rather was attributable to his efforts to advance the PBA's agenda, suspension was clearly excessive. Moreover, petitioner did not publish the letter upon which these charges are grounded or attempt to foment dissension within the police force. Hence, we are of the opinion that a simple reprimand should have sufficed to put this entire matter to rest.

We have not considered petitioner's contention that respondent violated his Taylor Law rights (Civil Service Law § 200 *et seq.*) because that determination in the first instance must be

made by the Public Employment Relations Board (see, Civil Service Law § 205 [5] [d]).*

Cardona, P. J., Peters, Spain and Carpinello, JJ., concur. Adjudged that the determination is modified, without costs, by annulling so much thereof as found petitioner guilty of charge Nos. 2, 10 and 11; petition granted to that extent, said charges dismissed and matter remitted to respondent for reconsideration of the penalty; and, as so modified, confirmed.

* By decision and order, dated November 26, 1996, the Public Employment Relation Board determined that respondent violated Civil Service Law § 209-a (1) (a) and (c). That determination is the subject of a separate CPLR article 78 proceeding.