■ In the Matter of Scott Richardson, Appellant, v City of Saratoga Springs et al., Respondents. [667 NYS2d 995] —Yesawich Jr., J. Appeal from a judgment of the Supreme Court (Keniry, J.), entered December 10, 1996 in Saratoga County, which, in a proceeding pursuant to CPLR article 78, dismissed the petition for failure to state a cause of action.

Petitioner, an electrician employed by respondent City of Saratoga Springs, charges respondents—the City and its Commissioner of Public Works—with acting illegally by modifying his job duties, and ultimately denying him a promotion, because he supported the Commissioner's political opponent in the 1993 election. Finding the record evidence insufficient to establish a causal link between petitioner's political activities and the fact that his co-worker was thereafter advanced in grade, while petitioner was not, Supreme Court dismissed the petition. This appeal followed.

We reverse. In support of his claims, petitioner proffered evidence demonstrating that shortly after he was directed to refrain from wearing a campaign sticker supporting the Commissioner's opponent while at work, the Commissioner—knowing that petitioner continued to express his opposing political views on his own time and that the City Council had authorized a review of the salaries and job classifications of all City employees—transferred certain of petitioner's duties to his co-worker, Vincent Arpey. Although petitioner concedes that prior to the classification review he and Arpey were both officially designated as "City Electricians", with the same job description and grade 13 salary classification, he also maintains that prior to the fall of 1993 (when he openly supported his brother-in-law in a run against the incumbent Commissioner) he had been the de facto supervisor of the entire electrical crew, and had overseen the work of Arpey as well as that of two laborers. This allegation finds support in a memo authored by the Commissioner in April 1995, in which he refers to petitioner's *"replacement * * * as Head Electrician"* (emphasis supplied). Respondents' assertions that petitioner never exercised any supervisory duties merely raised questions of fact and credibility in this regard, which Supreme Court did not address, having found the petition insufficient as a matter of law.

In any event, it is undisputed that Arpey—although still technically holding the same position as petitioner—began receiving different treatment, in some respects, in the fall of 1993. Arpey was invited to supervisors' meetings, though petitioner was not, and was permitted to retain radio equipment in his vehicle while petitioner's equipment was removed. In addition, petitioner was informed that he was to receive all of his work assignments from the Deputy Commissioner, and that his "in basket" had been moved to a different location in the office. Though the Commissioner avers that these changes were prompted by concerns over the quality of petitioner's work, there is no indication—indeed, petitioner affirmatively states otherwise—that the purported deficiencies were brought to petitioner's attention before his duties were modified or that they were contemporaneously documented even then (*see, Matter of Axel v Duffy-Mott Co.*, 47 NY2d 1, 8).

And, given the timing of these changes, it is reasonably inferable not only that they were prompted by the Commissioner's awareness, and disapproval, of petitioner's opposing political activities, but also that they were intended to influence the outcome of the pending classification review, by insuring that if a recommendation were made to raise the grade of one of the

electricians (as indeed occurred), Arpey, rather than petitioner, would be its beneficiary (*see*, *Matter of Axel v Duffy-Mott Co.*, *supra*, at 7; *Gleason v Callanan Indus.*, 203 AD2d 750, 750-751). In sum, petitioner satisfied his burden of coming forth with legally admissible proof that he was treated detrimentally—by having his job duties adjusted in a way that was calculated to, and did, lead to his being denied a promotion and concomitant salary increase—"for constitutionally impermissible reasons", namely, because of his off-duty political activities (*Matter of Zaretsky v New York City Health & Hosps. Corp.*, 84 NY2d 140, 145; *see*, *McManus v Grippen*, 244 AD2d 632, 632-634; *cf.*, *Gagliardi v Village of Pawling*, 18 F3d 188, 194-195). The fact that an independent consultant actually recommended the reclassification, and the City Council approved it, is of little significance where, as here, it can be inferred that those actions were the direct consequence of the changes in the electricians' work duties effected by the Commissioner (*cf.*, *Sogg v American Airlines*, 193 AD2d 153, 162, *lv dismissed* 83 NY2d 846, *lv denied* 83 NY2d 754).

For the same reasons, petitioner's claims that respondents acted illegally, in violation of the statutory proscriptions against making employment decisions on the basis of an employee's political activities, are also viable. If petitioner's averments are credited, a reasonable factfinder could conclude that he was discriminated against in compensation and promotion because of his political activities outside of working hours (*see*, Labor Law § 201-d [2] [a]), and that the selection of Arpey for the position of "Senior Electrician" was "affected or influenced by" petitioner's "political opinions or affiliations", in contravention of Civil Service Law § 107 (1).

Mikoll, J. P., Crew III, Spain and Carpinello, JJ., concur. Ordered that the judgment is reversed, on the law, with costs, and petition reinstated.