199 F.3d 607 (2nd Cir. 1999)
 JAMES E. FLAHERTY, Plaintiff-Appellant,
v.
JUNE LANG, individually and in her official capacity as PO-25 Section 3324 Instructor, Suffolk County Community College (SCCC), Ammerman Campus; SUSAN FINLAY, individually and in her official capacity as Social Sciences Instructor, SCCC Ammerman Campus; DR. GARY GOODWIN, in his official capacity as Head, Department of History, Political Science, & Geography, SCCC, Ammerman Campus; DEAN DORIS STRATMANN, in her official capacity as Section 504 Compliance Coordinator, & Dean of Institutional Planning, SCCC, Ammerman Campus; LINDA REISSER, in her official capacity as Dean of Students, SCCC Ammerman Campus; DR. ELMIRA JOHNSON, in her official capacity as Director, Office
 of Special Services, SCCC Ammerman Campus; KAREN PEPE, in her official capacity as SCCC Section 504 Special Needs Counselor, Office of Special Services, SCCC Eastern Campus; JUDITH BRESSALIER-KODIN, in her official capacity as SCCC Coordinator for Disabled Services, SCCC, Eastern Campus; DR. LAWRENCE PROPER, in his official capacity as Head, Department of Psychology, Sociology & Anthropology; JOANNE BRAXTON, in her official capacity as Dean of Students, Eastern Campus; DR. EILANE FRIEDMAN, in her official capacity as Director of Grants, SCCC, Ammerman Campus; DR. JOHN L. COOPER, President, SCCC, Ammerman Campus; NORMAN F. LECHTRECKER or his Successor in Office, in his official capacity as Chairman of the SCCC Board of Trustees; SCCC BOARD OF TRUSTEES; MERYL ROGERS, in her official capacity as Assistant Dean of Students and SCCC Disciplinary Hearing Officer; SUFFOLK COUNTY COMMUNITY COLLEGE; ROBERT BULL, in his official capacity as Member SCCC Disciplinary Committee; RUSSEL GUSSACK, in his official capacity as Member, SCCC Disciplinary Committee; ARTHUR KLEINFELDER, in his official capacity as Member SCCC Disciplinary Committee; PATRICIA YARBOUROUGH, in her official capacity as Provost, SCCC Ammerman Campus; COUNTY OF SUFFOLK, Defendants-Appellees.
 Docket No. 98-9418
August Term, 1998
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued: Aug. 11, 1999
Decided: Dec. 21, 1999
 
 Appeal from a judgment of the United States District Court for the Eastern District of New York (Thomas C. Platt, Judge), granting defendants' motion to dismiss under FED. R. CIV. P. 12(b)(6). In a prior action brought by this plaintiff against the same defendants, the District Court had denied plaintiff's motion for leave to supplement his complaint to add claims substantially similar to those plaintiff asserts in this action. Based on that denial, the District Court held in this case that plaintiff's claims are barred by res judicata. We conclude that res judicata does not bar plaintiff's entire action. We find that collateral estoppel operates to preclude his due process claim, but that he can proceed with his other claims in this action.
 Affirmed in part , vacated in part, and remanded.[Copyrighted Material Omitted]
 JAMES E. FLAHERTY, Hampton Bays, NY, pro se.
 CHRISTOPHER A. NICOLINO, Assistant County Attorney, on behalf of Robert J. Cimino, Suffolk County Attorney, Hauppauge, NY, for Defendants-Appellees.
 Before: CALABRESI, CABRANES, and SOTOMAYOR, Circuit Judges.
 JOSE A. CABRANES, Circuit Judge:
 
 
 1
 Pro se plaintiff James E. Flaherty appeals from the August 17, 1998 judgment of the United States District Court for the Eastern District of New York (Thomas C. Platt, Judge), dismissing under the doctrine of res judicata Flaherty's claims against Suffolk County Community College ("SCCC"); Suffolk County, New York; and certain individual defendants. In a prior action brought by this plaintiff against the same defendants, the District Court had denied plaintiff's motion for leave to supplement his complaint to add claims substantially similar to those asserted in this action. Based on that denial, the District Court held in the instant case that plaintiff's claims are barred by res judicata. We conclude that res judicata does not bar plaintiff's entire action. We find that collateral estoppel operates to preclude his due process claim, but that he can proceed with his other claims in this action. Accordingly, we affirm in part, vacate in part, and remand.
 
 BACKGROUND
 
 2
 James Flaherty was a student at SCCC from the fall semester of 1992 until midway through the spring semester of 1995. In February 1995, Flaherty pro se initiated an action in the United States District Court for the Eastern District of New York ("the 1995 action") against SCCC, Suffolk County, and most of the individual defendants named in the instant case. In the initial complaint filed in the 1995 action, Flaherty asserted that: (1) he had been discriminated against because he was disabled, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq., and the Rehabilitation Act, 29 U.S.C. 701, et seq.;[1] (2) the defendants had breached a settlement agreement arising out of a suit filed in 1993; and (3) he had been discriminated against on the basis of his religion. Flaherty sought injunctive relief, including "vacatur" of failing grades he had received in four of his classes, as well as compensatory and punitive damages.
 
 
 3
 On March 15, 1995, subsequent to Flaherty's having initiated the 1995 action, SCCC instituted disciplinary proceedings against him. SCCC charged Flaherty with having engaged in disruptive behavior, with threatening and abusive treatment of several professors, with academic dishonesty, and (notably) with having brought "baseless, frivolous lawsuits and academic grievances." On March 27, 1995, Flaherty submitted for the District Court's approval a proposed Order to Show Cause, to require defendants to explain why the disciplinary proceedings were not unlawful and should not be enjoined. The Court entered the order and held "show cause" hearings on March 28 and March 31, with both sides appearing and submitting briefs and supplemental papers. At the conclusion of the March 31 hearing, the Court declined to enjoin the disciplinary proceedings, denying the motion for injunctive relief without prejudice to renewal if Flaherty subsequently presented evidence that he had been denied procedural due process during the course of the proceedings.
 
 
 4
 Following further disciplinary proceedings at SCCC, Flaherty took up Judge Platt's offer and submitted a second proposed Order to Show Cause why SCCC should not be enjoined from punishing Flaherty. After holding a third hearing on the issue on May 22, 1995, Judge Platt refused to sign the order but pressed the defendants to grant Flaherty another hearing in the disciplinary proceedings. The defendants held the hearing on June 26, 1995; Flaherty was allowed to submit evidence and question witnesses. Ultimately, the charges based upon Flaherty's filing of grievances and lawsuits were dismissed. However, he was held responsible on the remaining charges, suspended from SCCC for four years, and given an additional year of probation.
 
 
 5
 During the course of the disciplinary proceedings, the defendants in the pending 1995 action moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Flaherty then cross-moved for, inter alia, leave to file a supplemental complaint stating claims arising out of the ongoing disciplinary proceedings. Specifically, Flaherty sought to add claims alleging that the disciplinary proceedings were an unlawful retaliation against him for having exercised his rights under the First Amendment and the ADA, and that he had been denied due process during the course of the proceedings. In an order dated June 12, 1996, the District Court granted the defendants' motion for summary judgment and denied Flaherty's cross-motions. The Court subsequently entered a number of findings of fact and conclusions of law in support of its decision, including the following:
 
 
 6
 66. Plaintiff has indicated that the focus of that [supplemental] complaint would be the student disciplinary proceeding in which Plaintiff was involved . . . .
 
 
 7
 67. Based upon the Court's involvement in the procedural issues surrounding that proceeding, and the finding that Plaintiff was provided with notice, an opportunity to be heard and an opportunity to confront witnesses against him, the Court further finds as a matter of law that due process was afforded to the Plaintiff in the context of that student disciplinary proceeding.
 
 
 8
 68. Likewise, because of the factual circumstances surrounding the disciplinary proceeding and the Court's involvement therein, the Court finds Plaintiff's contentions that his free speech rights were abridged to be unpersuasive.
 
 
 9
 69. These facts, coupled with the decision enunciated above that Plaintiff is not a disabled person and, therefore, not a member of that protected class of individuals, mandate that no federal question is involved in reviewing the student disciplinary proceeding.
 
 
 10
 70. Accordingly, Plaintiff's sole remedy regarding the disciplinary proceeding in which he was involved lies in a State court review pursuant to New York State's C.P.L.R. Article 78.
 
 
 11
 (emphasis supplied). Flaherty appealed the District Court's decision, but we dismissed the appeal on July 30, 1998, due to his default.
 
 
 12
 In the meantime, on March 16, 1998, Flaherty had filed another complaint pro se initiating the instant action ("the 1998 action"). In the 1998 action, Flaherty asserts that his suspension from SCCC violated (1) his constitutional rights to freedom of speech and due process; (2) the anti-retaliation provisions of the ADA and Rehabilitation Act; and (3) New York State law.[2] Defendants moved to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim for which relief can be granted, on the ground that Flaherty's claims were precluded by the June 12, 1996 decision of the District Court in the 1995 action. The District Court granted defendants' motion and dismissed the 1998 action on August 14, 1998. Flaherty then moved pursuant to FED. R. CIV. P. 59(c) to amend the judgment dismissing the 1998 suit and/or for relief from that judgment under FED. R. CIV. P. 60. The District Court denied Flaherty's motions, and this appeal followed.
 
 DISCUSSION
 
 13
 On appeal, Flaherty asserts, inter alia, that the District Court erred in dismissing his 1998 suit as precluded on the ground of res judicata. We review de novo the District Court's decision on a Rule 12(b)(6) motion. See, e.g., Sykes v. James, 13 F.3d 515, 518-19 (2d Cir. 1993). Dismissal under Rule 12(b)(6) is not appropriate unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 519 (internal quotation marks omitted). "This caution applies with greater force where the complaint is submitted pro se or the plaintiff alleges civil rights violations." Id.
 
 
 14
 Res judicata and collateral estoppel are related but distinct doctrines that may bar a party from litigating certain claims or issues in a subsequent proceeding. Both are affirmative defenses. See Leather v. Eyck, 180 F.3d 420, 424 (2d Cir. 1999). Under the doctrine of res judicata, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Rivet v. Regions Bank of La., 522 U.S. 470, 118 S. Ct. 921, 925 (1998) (internal quotation marks omitted); see also Leather, 180 F.3d at 424. In contrast, collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated by the same parties in a future lawsuit." Schiro v. Farley, 510 U.S. 223, 232 (1994). Collateral estoppel "applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." United States v. Hussein, 178 F.3d 125, 129 (2d Cir. 1999) (internal quotation marks omitted). Unlike res judicata, collateral estoppel does not bar a litigant from subsequently pursuing issues that were not raised in the first proceeding, but "could have been." Leather, 180 F.3d at 426.
 
 
 15
 As we recognized long ago, the obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action. See McNellis v. First Fed'l Sav. & Loan Ass'n of Rochester, 364 F.2d 251, 255 (2d Cir. 1966). The claims asserted in the 1998 action were raised in Flaherty's proposed supplemental complaint and not in his original complaint in the 1995 action. He could not have raised the supplemental claims in his original complaint in the 1995 action because they arose out of the SCCC disciplinary hearings, which were not instituted until after the filing of that complaint. The District Court's disposition of claims asserted in the original complaint in the 1995 action therefore has no preclusive effect on the new claims asserted in the 1998 action. Rather, the question presented here is whether Flaherty is precluded from re-asserting those claims-for unlawful retaliation for Flaherty's exercise of his rights under the First Amendment and the ADA, and for violation of his due process rights in the SCCC disciplinary proceedings-with respect to which the District Court denied Flaherty leave to file a supplemental complaint in the 1995 action. That question, in turn, breaks down into two subsidiary questions: First, is Flaherty collaterally estopped from raising his due process or retaliation claims on the ground that the issues relevant to those claims were actually litigated and decided in the 1995 action, even if never formally incorporated into a complaint? Second, even if Flaherty is not collaterally estopped from raising those claims, is he nevertheless barred by res judicata on the ground that he could have raised them in the 1995 action?
 
 
 16
 Where a plaintiff moves to file a supplemental complaint,[3] a trial court's denial of the motion does not necessarily preclude subsequent litigation of the claims in the proposed supplemental complaint. See McNellis, 364 F.2d at 256-57. As in the instant case, the McNellis Court grappled with the issue of the preclusive effect to be afforded to "the ambiguous disposition . . . of the proposed supplemental complaint." Id. at 256. It was clear in McNellis that leave to supplement had been denied by the court in the prior action, but it was not apparent that the denial was based on "a judgment on the merits of that complaint sufficient to justify application of res judicata rules." Id. The McNellis Court therefore looked to the facts of the case to determine whether the claim in the proposed supplemental complaint had been "before the court [in the prior action] in a realistic sense." Id. Although the McNellis Court did not explicitly distinguish between res judicata and collateral estoppel, its focus on the issue of whether a claim was "before the court in a realistic sense" suggests that it was considering collateral estoppel, which bars relitigation of any claims actually decided on the merits by a court. Whether, and in what circumstances, res judicata might apply to bar litigation of claims in a proposed supplemental complaint that were not decided on the merits was not resolved in McNellis.
 
 
 17
 With these principles in mind, we address each of Flaherty's claims in turn, analyzing whether the claim is barred by collateral estoppel or, alternatively, res judicata.
 
 A. Flaherty's Due Process Claim
 
 18
 Flaherty's due process claim is barred under the doctrine of collateral estoppel. The District Court's denial of leave to supplement the 1995 complaint clearly was on the merits insofar as it related to Flaherty's attempt to add a claim for due process violations in the SCCC disciplinary proceedings. During the pendency of the 1995 action, the Court held three hearings devoted to whether Flaherty was receiving the process due in the disciplinary proceedings. Both sides briefed this issue, with Flaherty submitting numerous papers, and it is clear to us that all the facts regarding the disciplinary proceedings were before the District Court when it denied Flaherty leave to file a supplemental complaint in the 1995 action. If anything, the Court was more intimately involved in resolving the due process claim than is advisable: The Court never granted the injunctive relief Flaherty requested, but offered at each hearing the Court's views about how the academic disciplinary proceedings should be conducted and gave Flaherty advice on how to proceed.[4] We question the propriety of this sort of judicial supervision and monitoring of on-going academic proceedings. In addition, it appears that the District Court improperly engaged in fact-finding in the course of resolving the motion for summary judgment. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994) (instructing that a trial court "cannot try issues of fact; it can only determine whether there are issues to be tried" (citation omitted)). Notwithstanding these possible errors, it is clear that Judge Platt's decision denying Flaherty's motion for leave to supplement his complaint by adding a due process claim was on the merits. The District Court's language in rejecting the motion further reinforces our conclusion.[5] See supra at 5-6.
 
 
 19
 The due process claim raised in the 1998 complaint is substantially similar to the due process claim Flaherty sought to add in the 1995 action. Flaherty had a full and fair opportunity to litigate that issue in the 1995 action, and the District Court's conclusion that Flaherty had received due process was necessary to support its judgment. As in McNellis, we look to the record and we conclude that Flaherty's due process claim was "before the court in a realistic sense" in the 1995 action. Accordingly, under the doctrine of collateral estoppel, Flaherty properly was precluded from relitigating the due process issue in the 1998 action.
 
 B. Flaherty's Retaliation Claims
 
 20
 The District Court's decision to bar Flaherty's retaliation claims in the 1998 action is another matter. We conclude that these claims are not barred under either collateral estoppel or res judicata.
 
 1. Collateral Estoppel
 
 21
 Defendants have not met their burden of showing that Flaherty enjoyed a full and fair opportunity to litigate his retaliation claims in the course of the 1995 action. It is true that in its June 12, 1996 ruling granting summary judgment to defendants and denying leave to file a supplemental complaint, the District Court concluded that the retaliation claims were unfounded. It is also true that the District Court's decision on the merits was the basis for the Court's denial of the motion to file a supplemental complaint. However, in contrast to the District Court's holding on the due process claim, the basis of the Court's conclusion on the retaliation claims is not readily apparent.
 
 
 22
 The record reveals that, prior to the District Court's June 12, 1996 decision rejecting the retaliation claims, the Court considered those claims once, during the first hearing, on March 28, 1995, concerning the SCCC disciplinary proceedings. At that hearing, Judge Platt told Flaherty:
 
 
 23
 You have claims in here that they are trying to [muzzle] you. Whether you are entitled to First Amendment relief for that, or whether you-you may have a claim if this attempt to [muzzle] you is for bringing a lawsuit against them, that may be a First Amendment right. I don't know.
 
 
 24
 Later in the conference, Judge Platt added, "Now there may be other things here where you have some constitutional right to speech which-that you say is violated and might rise to a level of constitutional acts." Apart from these passing statements by the District Court, however, nothing in the record has been brought to our attention to indicate that Flaherty had a full and fair opportunity to litigate his allegation that the SCCC disciplinary proceedings were instituted in retaliation for Flaherty's having exercised his rights under the ADA and the First Amendment. In these circumstances, we cannot conclude that Flaherty's retaliation claims are barred by collateral estoppel.
 
 2. Res Judicata
 
 25
 Nor are we able to apply the doctrine of res judicata to preclude Flaherty's retaliation claims. While it is true that those claims arise out of the same set of operative facts as the due process claim that we have concluded was fully and fairly litigated and actually determined, we are unwilling in these muddled circumstances to impose "the drastic remedy of foreclosing a party from litigating an essential issue." McNellis, 364 F.2d at 257. Our reluctance to foreclose Flaherty from litigating his retaliation claims rests on the circumstances of the instant case, and in part on Flaherty's pro se status. Because the District Court in the 1995 action did not afford Flaherty an opportunity to litigate the merits of each of his proposed supplemental claims, Flaherty may have been led to believe that the appropriate procedure was to file a separate action rather than to appeal. As it happened, he did both. Moreover, both the language of the complaint in the 1998 action[6] and Flaherty's seemingly inexplicable default on the appeal of the dismissal of the 1995 action suggest that he was unable to determine how to proceed. Perhaps if he been represented by counsel in the 1995 action, we might be less hesitant to apply the doctrine of res judicata to preclude the retaliation claims.[7] Under the circumstances, we will not preclude Flaherty's retaliation claims, despite the common identity of the parties in the 1995 and 1998 actions and the fact that the retaliation and due process claims arise out of the same disciplinary proceedings.[8] Accordingly, we vacate the District Court's judgment insofar as it dismissed Flaherty's retaliation claims.[9]
 
 CONCLUSION
 
 26
 The judgment of the District Court dismissing plaintiff's claims on preclusion grounds is affirmed in part and vacated in part. Specifically, we affirm so much of the judgment as dismissed plaintiff's due process claim, vacate so much as dismissed his state law claims and claims for retaliation under the First Amendment and ADA, and remand the cause to the District Court for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Flaherty alleged that he was disabled because he had a cataract in one eye that resulted in 20/70 vision and because he suffered from a sprained finger.
 
 
 [2]
 The 1998 complaint provides, "Plaintiff files this action to preserve his rights, and if successful on appeal in [the 1995 action], Plaintiff will move to deem this Complaint a supplemental complaint [in the 1995 action], or alternatively move to consolidate this action with the related [1995 action]."
 
 
 [3]
 FED. R. CIV. P. 15(d) provides: "Upon motion of a party the court may . . . permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."
 Where a "plaintiff's proposed additions to his complaint principally recite transactions, occurrences or events that have transpired since the date of the pleading sought to be supplemented," the motion "is technically categorized under Rule 15(d) . . . as opposed to Rule 15(a). The latter subsection is designed chiefly to allow a party to replead or to add facts or claims that arise either prior to or contemporaneous with the allegations stated in the original complaint." Katzman v. Sessions, 156 F.R.D. 35, 37-38 (E.D.N.Y. 1994).
 
 
 [4]
 For instance, at the conclusion of the March 28, 1995 hearing, Judge Platt stated:
 I think I am inclined to-without more, without more knowledge than I have, not to enjoin th[e SCCC disciplinary] proceeding, but you [Flaherty] ought to make yourself a pretty good record. But when you go in there you ought to ask for more time, tell them this is not a convenient date for you have and so forth and so on. You've got the following witnesses. And then see what they do. Whether they grant you due process, whether they give you the right to cross-examine anybody who is going to make statements, whether they are going to produce people who actually have first-hand knowledge of the facts or they are going to just produce a lot of hearsay evidence. . . .
 I have told the attorney for these defendants that I think what they are doing is not very well advised to try and jam something down your throat in one day when people are not available, . . . If they do it they may have to suffer the consequences. That's all. . . . I am going to advise him not to go ahead with the hearing. If they go ahead with the hearing they do so at their own risk.
 In a similar vein, at the conclusion of the March 31 hearing, Judge Platt told defendants' counsel, "Give [Flaherty] the witnesses he asked for and the experts. Okay. Otherwise you will be back here, Mr. Nicolino. Good-bye."
 At the hearing on May 22, 1995, Judge Platt told plaintiff (who was represented by counsel at the hearing):
 [Y]ou've got two causes of action. One, is that you take an appeal from the record as it now stands; and two, is that if you ask me to order the [SCCC disciplinary committee] to reopen the case and give you a hearing, [and] if they refuse to do so, then you make a motion to hold them in contempt on a test case basis, which I will do in each and every one of them, fine them each a dollar, and take it up to the Court of Appeals on this procedural defect basis. The other is that you proceed in the state court to combine the merits question which-the merits are not my concern and I don't think the Second Circuit will consider them because there is no jurisdiction for me to consider the merits, it's just a question whether he has been given procedural due process.
 Judge Platt then asked Flaherty's counsel: "Don't you have a better opportunity to combine your procedural problems with the merits, whatever they may be, in the state court system than they would be here?"
 
 
 [5]
 For purposes of res judicata, it is immaterial whether the District Court erred in the 1995 action in denying Flaherty's motion to supplement his complaint. See Nemaizer v. Baker, 793 F.2d 58, 64 (2d Cir. 1986); Miller v. National City Bank of New York, 166 F.2d 723, 726 (2d Cir. 1948); In re Scientific Control Corp., 80 F.R.D. 237, 243 (S.D.N.Y. 1978). Flaherty was entitled to our review of that decision on appeal of the 1995 action, but he defaulted before we could hear the case. There is no basis for reviewing the decision by the District Court in the 1995 action on this appeal of the judgment in the 1998 action.
 
 
 [6]
 See supra at 6 n.2.
 
 
 [7]
 However, we should not be understood to state a general rule that res judicata automatically bars a litigant represented by counsel from raising in a future action any claim that could have been included in a proposed supplemental complaint that has been denied under FED. R. CIV. P. 15(c).
 
 
 [8]
 Nor are Flaherty's state law claims, which the District Court expressly declined to address in the 1995 action, precluded.
 
 
 [9]
 Although Flaherty asks us to adjudicate the merits of his complaint, we leave that task to the District Court on remand.