Timothy MACFARLANE, Plaintiff,

v.

The VILLAGE OF SCOTIA, NEW YORK, and James Denney, Mayor, Defendants.

No. 98–CV–661.

United States District Court, N.D. New York.

March 3, 2000.

Grasso & Grasso, Schenectady, New York, John V. Cremo, of counsel, for plaintiff.

Horigan, Horigan & Lombardo, P.C., Amsterdam, New York, Krishna Singh, of counsel, for defendants.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiff Timothy Macfarlane ("Macfarlane" or "plaintiff") commenced the instant action pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that the defendants, the Village of Scotia ("Village") and Mayor James Denney ("Denney"), violated his First Amendment rights to free speech and free association. The defendants have moved for summary judgment, pursuant to Fed. R.Civ.P. 56, or alternatively, to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff cross-moved for summary judgment. Oral argument was heard on January 28, 2000 in Albany, New York. Decision was reserved.

## II. FACTS

Macfarlane was hired by the Village of Scotia Police Department on August 28, 1979. He held the rank of patrolman from

August 1979 through January 1995. In January 1995, Macfarlane was appointed to the position of sergeant. Macfarlane was also a member of the Scotia Patrolmen's Benevolent Association ("PBA"), and was vice president in April of 1995.

On or about April 11, 1995, plaintiff wrote a letter to the Village Board of Trustees ("Trustees") regarding the implementation of the 911 system and dispatching of 911 calls in the Village. The letter also contained critical remarks against the provisional Chief of Police, Paul Boyarin.[1] As a result of this letter, the Trustees, comprised of four Trustees and Denney, commenced disciplinary charges against plaintiff for misconduct. The hearing officer recommended that Macfarlane be suspended without pay for ten days. The Trustees adopted the hearing officer's recommendation. Denney abstained from voting. Plaintiff returned to the rank of patrolman effective April 25, 1995.

Plaintiff commenced an Article 78 proceeding challenging the hearing officer's findings. On July 3, 1997, the New York State Supreme Court, Appellate Division, Third Department ("Third Department"), found that the majority of the disciplinary charges against plaintiff were supported by substantial evidence, and that plaintiff was not entitled to First Amendment protection because his interest in speaking on a matter of public concern was outweighed by the Village's interest in promoting the efficiency of the public service it performs through its employees. *MacFarlane v. Village of Scotia*, 241 A.D.2d 574, 659 N.Y.S.2d 351 (3d Dep't), *appeal dismissed*, 90 N.Y.2d 1008, 688 N.E.2d 1384, 666 N.Y.S.2d 102 (1997). However, the court remitted the matter to the Trustees for reconsideration of the penalty to be imposed, noting that the ten-day suspension without pay "was unduly harsh." *Id.* at 576, 659 N.Y.S.2d at 354. On October 28, 1997, the Trustees again imposed the ten-

day suspension, which was later vacated by the New York State Supreme Court, Schenectady County. (*See* Cremo Aff. in Opp'n Ex. G.)

On or about June 19, 1995, the PBA filed an improper practice charge on Macfarlane's behalf with the New York State Public Employment Relations Board ("PERB"), claiming that plaintiff's reduction in rank from sergeant to patrolman was due to his union activities. The charge was initially dismissed by an Administrative Law Judge ("ALJ"). However, the full PERB board reversed the ALJ's decision, finding that plaintiff was acting on behalf of the union when he wrote the letter, he was demoted for writing it, and the letter was protected under the Public Employees' Fair Employment Act (the "PEFEA"), N.Y.Civ.Serv.Law §§ 200–214 (McKinney 1999). On March 18, 1998, the Third Department affirmed the PERB's determination. *See Village of Scotia v. New York State Pub. Employment Relations Bd.*, 241 A.D.2d 29, 670 N.Y.S.2d 602 (3d Dep't 1998). However, the Third Department annulled the PERB's determination to restore Macfarlane to the position of sergeant with back pay and remitted to the PERB for further consideration the issue of appropriate remedial action.

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The

---

1. For example, the letter stated that Boyarin was a "tool of the Mayor." (Notice of Mot. Ex. U at 68.)

moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106. S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–249, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–1224 (2d Cir.1994) (citations omitted).

### B. *Plaintiff's Freedom of Speech Claim*

■ The defendants claim that Macfarlane's First Amendment freedom of speech and freedom of association claims are barred by collateral estoppel because the Third Department has already held that plaintiff is not entitled to First Amendment protection.

■ "Res judicata and collateral estoppel are related but distinct doctrines that may bar a party from litigating certain claims or issues in a subsequent proceeding." *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir.1999). Under the doctrine of res judicata, " 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *Rivet v. Regions Bank of La.*, 522 U.S. 470, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). Collateral estoppel, on the other hand, means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated by the same parties in a future lawsuit." *Schiro v. Farley*, 510 U.S. 222, 232, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994).

■ "Collateral estoppel 'applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.' " *Flaherty*, 199 F.3d at 613 (quoting *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir.1999)).

Macfarlane claims the doctrine of collateral estoppel is not applicable because the Third Department did not correctly analyze his First Amendment claims and he plans to appeal its decision.[2] Thus, plaintiff only appears to contest the finality of the prior judgment.

■ The concept of finality for purposes of collateral estoppel is not the same as finality for purposes of appeal. *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir.1961), *cert. denied*

---

**2.** Plaintiff's assertion that the Third Department incorrectly analyzed his claims is not subject to review here and is not a basis to

preclude application of the doctrine of collateral estoppel.

*sub nom. Dawson v. Lummus Co.*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). "A judgment may be final, despite the fact that an appeal from it has not been decided, whether because the appeal is pending, or the party has lost its right to appeal because of the circumstances of the case, or the law does not provide for review." *Sherman v. Jacobson*, 247 F.Supp. 261, 268 (S.D.N.Y.1965) (internal citations omitted). In addition, a judgment may be final with respect to certain matters and not for other matters. *Id.* "Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *Id.* at 269. Generally, the possibility of appeal does not prevent application of the doctrine of collateral estoppel. *Id.* at 270 (citing *United States v. Nysco Labs., Inc.*, 318 F.2d 817 (2d Cir.1963); Restatement of Judgments § 41 cmt. d (1942)).

Plaintiff asserts that the Trustees violated his constitutional rights under the First Amendment by retaliating against him for statements he made in his April 11, 1995 letter. However, in light of the above, plaintiff's freedom of speech claim must be dismissed as barred by the doctrine of collateral estoppel. The issue of whether Macfarlane's right to freedom of speech was violated was presented to the Third Department. He had a full and fair opportunity to litigate this issue. The Third Department determined that plaintiff is not entitled to First Amendment protection. With respect to the issue of finality, the Third Department remitted the case solely for reconsideration of the penalty to impose on plaintiff. Thus its determination that Macfarlane was not entitled to First Amendment protection was in no way tentative. Finally, as stated above, the fact that plaintiff plans to appeal the Third Department's decision does not preclude the application of collateral estoppel.

Consequently, plaintiff's freedom of speech claim is barred by the doctrine of collateral estoppel. However, as discussed below, plaintiff's freedom of association claim is not similarly barred.

### C. *Freedom of Association Claim*

▮▮▮▮▮ Plaintiff contends that he is entitled to summary judgment with respect to his freedom of association claim because the Third Department determined that his April 11, 1995 letter was protected under PEFEA, and plaintiff was punished for writing it. *See Village of Scotia*, 241 A.D.2d 29, 670 N.Y.S.2d 602. For purposes of applying collateral estoppel, "the issue as to which preclusion is sought must be identical to the issue decided in the prior proceeding." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir.1992), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). Issues are not identical if the legal standards governing their resolution are significantly different. *Id.*

In the present case, whether the defendants violated Macfarlane's First Amendment right to freely associate is a significantly different inquiry than whether the defendants committed an unfair labor practice under New York's Civil Service Law. Thus, Macfarlane's First Amendment freedom of association claim was never presented to the Third Department. As a result, Macfarlane is not entitled to summary judgment on the basis of collateral estoppel with respect to his freedom of association claim. Further, for the reasons which follow, plaintiff's freedom of association claim must be dismissed.

### 1. *Claim against the Village and Denney in his official capacity*

▮▮▮▮▮ Municipalities cannot be held liable under § 1983 based on the theories of respondeat superior or vicarious liability. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality can be found liable under § 1983 only where

[T]he action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover ... local governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not reached formal approval through the body's official decision-making channels.

*Id.* at 690–91, 98 S.Ct. 2018. Thus, an unconstitutional governmental policy may be inferred either from the official pronouncements and actions of the governmental agency or from custom. A municipal policy may also be imposed for a single decision by a municipal official who has final policymaking authority. *See Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *see also Krulik v. Board of Educ. of New York*, 781 F.2d 15, 23 (2d Cir.1986) (stating that "an individual official's acts can rise to the level of 'policy' when 'senior personnel' knowingly 'acquiesce' in their subordinates' behavior").

 Plaintiff has failed to set forth any allegations that he was deprived of his constitutional rights pursuant to an unconstitutional municipal custom or policy. In fact, the evidence demonstrates that plaintiff has spoken and written articles with respect to the 911 system on many occasions and was never disciplined before. Macfarlane alleges that Denney, as policymaker for the Village actively instigated the disciplinary charges against the plaintiff and persuaded the Trustees to authorize the charges. (*See* Compl. ¶¶ 28, 29.) However, plaintiff has provided no support for these conclusory allegations. Therefore, plaintiff's claim against the Village and Denney in his official capacity is dismissed.

### 2. *Claim against Denney in his individual capacity*

As previously noted, plaintiff claims that Denney violated his constitutional rights

by "actively instigat[ing]" the charges brought against him, Compl. ¶ 28, persuading the Village to authorize such charges, *Id.* ¶ 29, and "us[ing] his political position ... to ensure that Plaintiff Macfarlane was suspended without pay." *Id.* ¶ 34. However, he does not offer any evidence to substantiate this claim. In fact, it is undisputed that when the Trustees voted to suspend Macfarlane, Denney abstained from voting. Thus, plaintiff has failed to set forth a genuine issue of material fact. Accordingly, plaintiff's claim against Denney in his individual capacity must be dismissed.

### D. *Conspiracy Claim*

Since plaintiff's First Amendment claims have been dismissed, he cannot state a § 1985 claim for conspiracy to deprive him of such rights. Therefore, plaintiff's § 1985 claim is dismissed.

## IV. *CONCLUSION*

Plaintiff's freedom of speech claim is barred by the doctrine of collateral estoppel. Plaintiff's freedom of association claim must fail because he has failed to allege a municipal policy or custom on the part of the Village and his allegations against Denney are conclusory and without any evidentiary support. As a result of plaintiff's failure to assert viable First Amendment claims, his § 1985 conspiracy claim must also be dismissed.

Accordingly, it is

ORDERED, that

1. The defendants' motion for summary judgment is GRANTED;

2. Plaintiff's cross-motion for summary judgment is DENIED; and

3. The complaint is dismissed in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.