Timothy J. WALKER; Shane King;
and Terrance Jackson,
Plaintiffs,

v.

Michael A. SHEPARD; Lawrence Shepard; Salvatore T. Valent; Wayne Lints, a/k/a William Lintz; Anthony J. Leonard; Mark W. Williams, Daniel Cozza, Ronald Fontaine, Myron Maunz, Sherman F. Jones, Jr., and Fred Bruzzese, Each Individually and as a Police Officer of the City of Utica, NY; Pasquale Benzo, Individually and as a Captain of Police of the City of Utica, NY; Nicholas Yagey, Individually and as Deputy Chief of Police of the City of Utica, NY; Benny J. Rotundo, Individually and as Chief of Police of the City of Utica, NY; and The City of Utica, New York, Defendants.

No. 96–CV–1687.

United States District Court,
N.D. New York.

Aug. 7, 2000.

Lockwood & Golden, Utica, NY, for plaintiffs.

Todd D. Bennett, Herkimer, NY, for defendants, Michael A. Shepard, Lawrence Shepard.

George F. Aney, Herkimer, NY, of counsel Stephen L. Lockwood, for defendant Salvatore T. Valent.

Office of the Corporation Counsel, Utica, NY, of counsel John P. Orilio, for City defendants.

### MEMORANDUM–DECISION AND ORDER

HURD, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiffs commenced the instant action pursuant to 42 U.S.C. §§ 1983 and 1985, alleging violations of their Fourteenth Amendment right to equal protection under the law. Defendants Mark W. Williams, Daniel Cozza, Ronald Fontaine, Myron Maunz, Sherman F. Jones, Jr., Fred Bruzzese, Pasquale Benzo, Nicholas Yagey, Benny J. Rotundo, and the City of Utica (collectively referred in this opinion as "City defendants") have moved for summary judgment pursuant to Fed.R.Civ.P. 56. Defendants Michael Shepard and Lawrence Shepard ("Shepard defendants") have also moved for summary judgment. Plaintiffs oppose both motions. Oral argument was heard on May 12, 2000 in Utica, New York. Decision was reserved.

## II. FACTS

The following are the facts viewed in a light most favorable to the nonmovant plaintiffs. In the early morning hours of October 23, 1995, plaintiff Terrance Jackson ("Jackson"), who is African–American, stopped in a Burger King parking lot in Utica, New York on his way home from work. Jackson exited his vehicle to use the pay phone when a car with five white males which he had passed on his way to Burger King also pulled into the parking lot. The men exited their vehicle, approached Jackson, and allegedly pushed him, struck his rear window with an object, spit in his face, and shouted racial epithets. Jackson got back into his vehicle and drove away, but later returned to the Burger King parking lot to telephone the police. Jackson reported to the police that he had been harassed by five white men whom he described. He also described the make, model, and license plate number of the alleged assailants' vehicle. Jackson refused, however, to identify himself to the police and told the dispatcher that he merely observed the altercation but was not a participant.

A few minutes later, in the vicinity of Jay Street in Utica, plaintiffs Timothy Walker ("Walker") and Shane King ("King"), both of whom are also African–American, were allegedly physically assaulted and verbally harassed by the same group of five white men. Police responded to the scene where King related what happened. Walker, who had been severely injured and rendered unconscious, was unable to respond to police questioning. He was transported to the hospital by ambulance. Walker has no memory of who struck him.

Police investigated the incident, and the five white men were later identified as defendants Michael Shepard, Lawrence Shepard, Salvatore Valent, Wayne Lints, and Anthony Leonard (collectively referred to in this opinion as "lay defendants"). However, the police did not publicly identify nor arrest the lay defendants. The police also did not take photographs of Walker's injuries. While the investigation was ongoing, the Utica Police Department did issue a press release indicating that the altercation involving Walker and King was not racially motivated and that the investigation was impeded by the lack of cooperation from Walker, his family, and his attorney. Also at this time, several newspaper articles concerning the incident involving Walker and King were published.

As a result of the investigation, on December 20, 1995, an Oneida County Grand Jury returned an indictment against Michael Shepard and Lawrence Shepard, charging them with Assault in the second degree[1] upon Walker.[2] Both pleaded

---

1. See N.Y. Penal Law § 120.05 (McKinney 2000).

2. Neither Michael Shepard nor Lawrence Shepard were charged with crimes against Jackson or King.

guilty on January 26, 1996, and were sentenced to probation, community service, and restitution for Walker's hospital expenses. The other three lay defendants were not charged at all.

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. Thus,

summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### B. *Claims Against The City Defendants*

#### 1. *Fourteenth Amendment—Equal Protection Claim*

■ In the context of law enforcement investigations, "[c]ourts have recognized section 1983 equal protection claims based upon discriminatory failures by public officials to conduct proper investigations." *Daniels v. City of Binghamton*, No. 3:95–CV–688, 1998 WL 357336, at *5 (N.D.N.Y. June 29, 1998) (citing *Hayden v. Grayson*, 134 F.3d 449 (1st Cir.1998)). However, while law enforcement may not "selectively deny ... protective services to certain disfavored minorities without violating the Equal Protection Clause," *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 n. 3, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), "there is no constitutional right to an investigation per se." *Daniels*, 1998 WL 357336, at *5. Therefore, to state a race-based equal protection claim, a plaintiff must show that a government actor intentionally discriminated against him/her. *See Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir.1999); *see also Daniels*, 1998 WL 357336, at *5. Such purposeful discrimination may be found where public officials were motivated by a discriminatory purpose. *See Washington v. Davis*, 426 U.S. 229, 243–44, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

The City defendants claim that the plaintiffs fail to submit any evidence that they intentionally discriminated against them because of their race. In an attempt to demonstrate discrimination on the part of the City defendants, the plaintiffs point to the press release issued by the Utica Police Department and the newspaper articles concerning the incident. Plaintiffs

claim that an inference of racial animus can be made from the fact that the press release (1) failed to identify the five lay defendants; (2) stated that the attack was not racially motivated; and (3) stated that Walker, his family, and his attorney hindered the investigation. However, there is no evidence that the police departed from normal procedure by not identifying the suspects involved in the case. In addition, the statements made in the press release, even if incorrect or untrue, are insufficient to raise an inference that they were made with a discriminatory motive. An innocent or negligent reason is just as plausible.[3] Without more, the mere fact that the press release may have contained errors or misrepresentations does not warrant the conclusion that a prima facie case has been made that such errors or misrepresentations were intentionally made because of racial animus.[4] Finally, the newspaper articles printed regarding the incidents which are the subject of the instant action were written by reporters who were not employed by the City or its police department. While these items express community concern that the attack against Walker was racially motivated, they are not evidence of any racial animus on the part of the City defendants.[5]

The plaintiffs also contend that discriminatory intent and racial animus can be inferred from the police department's failure to take photographs of Walker's injuries and failure to arrest all five of the lay defendants. However, the plaintiffs do not present any evidence, such as expert testimony or documents containing police policy, that taking photographs is part of the police department's normal investigative procedure in a case such as this. Neither is there any expert testimony that immediate arrests rather than turning the investigation over to the Oneida County District Attorney and awaiting presentation to a grand jury would have been the normal or proper procedure.[6] The plaintiffs also submit no evidence, such as previous similar investigations involving white complainants, which indicates that they were treated differently than other crime victims and that such differential treatment was because of their race. There is also no evidence which indicates that if the race of the parties involved were reversed in this case, that is, if five black males assaulted three white men, that the investigation and public relations would have proceeded differently.[7]

3. In a newspaper article, defendant Chief Rotundo acknowledged that the release came from the Utica Police Department. The City defendants now claim that "no Utica Police officer took part in, or had any role in, the preparation of an alleged press release." (Lockwood Aff. Ex. F.) This is troublesome. However, because the plaintiffs' attorneys conducted no further discovery on the issue, details concerning the release, such as *who* prepared it, and *how*, *when*, and *why* it was prepared, are unknown.

4. The defendants contend that the press release is inadmissible hearsay because it is not signed, dated, or printed on any kind of City of Utica letterhead. However, the issue of the press release's admissibility need not be determined.

5. The plaintiffs also point to the fact that there were a number of protest meetings of "concerned citizens." particularly in the African–American community, regarding the attacks. However, public meetings are not evidence of racial animus on the part of the police department.

6. In fact, for the police to have arrested the lay defendants Valent, Lints, and Leonard, would have been a mistake since they were never indicted by the grand jury for any crime.

7. At oral argument, plaintiffs' attorney stated that his clients were too poor to retain an expert or experts to review the case as to proper police procedures or the past experiences of the Utica Police Department. Although sympathetic to the problem, this does not authorize a judge to "bridge the gap" in the evidence in order to make out a case for the plaintiffs based on innuendo, suspicion, or guesswork. In addition, in an appropriate case, a poor person may make an in forma pauperis application to seek court approval for the payment of funds to retain an expert. No such application was ever made in this case.

In addition to the fact that the plaintiffs have utterly failed to present any evidence that the Utica Police Department departed from normal procedure concerning the investigation of the incidents involved in this case, the plaintiffs can point to no custom or policy on the part of the Utica Police Department of deliberately depriving African–Americans of their constitutional rights. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that a municipality can be found liable under § 1983 only where the action that is alleged to be unconstitutional is taken pursuant to a governmental custom or policy). Plaintiffs merely rely on the facts and circumstances surrounding their particular incident. However, one incident is insufficient to establish an unconstitutional custom and practice.

■ Further, the plaintiffs present no evidence demonstrating how any of the individual City defendants in this case violated their constitutional rights. In the City defendants' first set of interrogatories, they requested that the plaintiffs set forth each and every act committed by each defendant which constituted a deprivation of his constitutional rights. In response, Walker and King stated that "One or more of the individual Defendant police officers" failed to act upon the complaint and telephone call of Terrance Jackson, did nothing to apprehend the five lay defendants, conducted a biased investigation, refused to disclose the identities of the lay defendants to the public, failed to bring criminal charges against the lay defendants, issued a press release containing several misrepresentations, and conspired to withhold information from the public. (Orilio Aff. Exs. C ¶ 18, D ¶ 18.) Aside from the fact that these contentions are conclusory, they fail to specify which defendant is responsible for the particular conduct alleged.[8] It appears that the plaintiffs simply sued every police officer whose name they knew without first assessing what role, if any, they actually played in investigating the incidents in question.[9]

The evidence in this case shows that an investigation was performed by the Utica Police Department, and following a grand jury indictment, the Shepard defendants were arrested for assaulting Walker.[10] If the police department "conducted a biased investigation designed to exonerate the [lay] Defendants", *Id.*, as the plaintiffs claim, the Shepard defendants would never have been arrested. Further, the United States Department of Justice investigated the Utica Police Department's handling of these incidents and determined that there was insufficient evidence "to establish a violation of federal civil rights statutes." (Orilio Aff. Ex. L.)

The proof offered by the plaintiffs in this case is so deficient that there is essentially no evidence from which to infer racial animus or discriminatory intent on the part of

8. Several of plaintiffs' responses to the City defendants' interrogatories fail to set forth specific bases for their claims, but rather, reiterate the allegations contained in the complaint or make conclusory allegations. Such tactics only reemphasize the fact that the plaintiffs have no evidence to support their claims against individual City defendants.

9. The plaintiffs' attorneys conducted *no* depositions of the individual City defendants. Again, this was apparently because of lack of funds. However, before taking on clients and instituting an action which accuses nine individual members of the police department of racial bias (apparently on the basis that the individuals were either persons in authority or their names appeared somewhere in an official report) an attorney should be prepared to prosecute the case, which would, at the minimum, appear to require depositions so that each individual City defendant's exact role is known.

10. Further, plaintiffs point to the fact that neither Shepard defendant was indicted for Aggravated harassment in the second degree in violation of Penal Law § 240.30(3), a so-called hate crime statute. Again, this action by a duly authorized grand jury after a presentation by the independent Oneida County District Attorney, is no evidence of racial animus on the part of the City defendants.

the City defendants. The plaintiffs have devoted much of their response to the motion to establish the fact that both attacks were racially motivated. This may be true. However, that is not the issue as to the claims against the City defendants. While the police investigation may not have been perfect or to the plaintiffs' satisfaction, there is no evidence to support a finding that the investigation was motivated by discriminatory intent or racial animus. Moreover, the plaintiffs fail to make the necessary showing that the City of Utica has a custom or policy of depriving African–American citizens of their constitutional rights. Finally, the plaintiffs fail to elucidate the specific conduct on the part of the individual City defendants which violated their constitutional rights.

In summary, one or more of the City defendants may have violated the Equal Protection Clause by intentionally discriminating against the plaintiffs. However, in opposition to the City defendants' motion for summary judgment, the plaintiffs have failed to (1) "set forth specific facts" against the individual City defendants, *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; (2) offer any evidence "upon which a reasonable jury could return a verdict for [plaintiffs]," *Id.* at 248–49, 106 S.Ct. 2505; and they (3) presented "little or no evidence" to support their allegations. *Gallo,* 22 F.3d at 1223–24. Rather, after conducting very limited discovery, the plaintiffs have presented nothing more than a series of events in the hope that there will be enough suspicion to hold the City defendants for trial. This is clearly insufficient to raise genuine issues of material fact and defeat a properly documented summary judgment motion. Speculation and innuendo are not facts. As a result, there is no choice but to dismiss the plaintiffs' equal protection claim against the City defendants.

**2. *§ 1985 Conspiracy Claim***

Since plaintiffs' Fourteenth Amendment claim against the City defendants will be dismissed, they cannot state a § 1985 claim for conspiracy to deprive them of such rights. *See Macfarlane v. Village of Scotia,* 86 F.Supp.2d 60, 66 (N.D.N.Y. 2000). Therefore, plaintiffs' § 1985 claims against the City defendants must also be dismissed.

**C. *Claims Against the Shepard Defendants***

**1. *§ 1985 Conspiracy Claim***

■ "The elements of a claim under § 1985(3) are: '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, ...; (3) an act in furtherance of the conspiracy; (4) whereby a person is ... deprived of any right of a citizen of the United States.'" *Brown v. City of Oneonta,* 195 F.3d 111, 123 (2d Cir.1999) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam)); *see also Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

In the instant case, the plaintiffs have presented sufficient evidence to survive summary judgment on their § 1985 claim against the Shepard defendants. Jackson testified that all five lay defendants exited their vehicle, came toward him and stopped in front of him. According to Jackson, when he asked what the problem was, Lawrence Shepard stated, "[W]hy did you pass me nigger[?]" and pushed him down onto his driver's seat. (Jackson Dep. at 29.) Then another man, later identified as Michael Shepard, who had a pipe in his hand and pounded on Jackson's rear windshield, also called Jackson a nigger and stated that they should harm him. *Id.* at 31–32. When Jackson apologized for passing them, a third man stated, "[L]et's just go get someone else." *Id.* at 36. Then, according to Jackson, Lawrence Shepard said "God is on your side tonight, nigger," and spit in his face. *Id.* The five men then got in the car and started to leave. Jackson was looking at their li-

cense plate when Michael Shepard shouted, "[W]hat are you looking at nigger[?]" *Id.* at 39. Michael Shepard then threw the pipe at Jackson's car, then ran up and kicked the rear driver's side door. He then got into the car and all five lay defendants left the scene.

King and Walker testified that, while walking down the street, a car with five white men passed them. According to Walker, one of the occupants shouted out the window something to the effect of, " '[Y]ou niggers are going to get it' or 'you niggers are in for it.' " (Walker Dep. at 19.) The car then made a U-turn and stopped in front of them. All five men got out of the car and approached King and Walker. One grabbed a tree branch and one had a pipe. *Id.* at 17. While two physically assaulted King and Walker, the other three surrounded them. (King Dep. at 20.) One of the men who fought with King said, "[N]igger you better show me some respect." *Id.* Another punched King in the back of the head.

The testimony of the plaintiffs and Lawrence Shepard reveals that both Shepard defendants got out of the vehicle with the other lay defendants and verbally confronted Jackson. They also took part in discussions with the others concerning whether or not to start a fight with the plaintiffs. In addition, Lawrence Shepard admitted that he and his brother were involved in a physical altercation with Walker and King. (Lawrence Shepard Dep. at 43–47.) Finally, the plaintiffs specifically recall the Shepard defendants repeatedly calling them racial epithets. From the testimony submitted in connection with this motion, a reasonable jury could determine that the Shepard defendants were involved in a conspiratorial ef-

fort to assault the three black plaintiffs, and did so with racial motivation. Therefore, the Shepard defendants' motion to dismiss the plaintiffs' § 1985 claims against them must be denied.

### 2. *State Law Claims*

 The Shepard defendants claim that the plaintiffs have failed to establish that the altercation or injuries sustained were a result of action by either of them.[11] In addition to the aforementioned testimony of the three plaintiffs, Lawrence Shepard's deposition testimony also contains evidence which, together, raises issues of fact concerning whether the Shepard defendants committed assault and battery against the plaintiffs. Lawrence Shepard admitted that he and the other lay defendants all got out of their vehicle and engaged in a verbal altercation with Jackson. *Id.* at 28–29. Further, as previously mentioned, he admitted that he and his brother were involved in a physical altercation with Walker and King. *Id.* at 43–47. Therefore, the Shepard defendants' motion to dismiss plaintiffs' state law claims against them must also be denied.

### IV. *CONCLUSION*

In light of the foregoing, it is hereby

ORDERED, that

1. The motion for summary judgment by defendants Mark W. Williams, Daniel Cozza, Ronald Fontaine, Myron Maunz, Sherman F. Jones, Jr., Fred Bruzzese, Pasquale Benzo, Nicholas Yagey, Benny J. Rotundo, and the City of Utica is GRANTED, and the complaint against these defendants is dismissed; and

---

**11.** The plaintiffs claim that the Shepard defendants are collaterally estopped from denying that they committed assault and battery against Walker because they pled guilty to assault. However, plaintiffs' assertion is rejected since as a result of their pleas, this issue was never actually litigated and decided. *See Flaherty v. Lang,* 199 F.3d 607, 613 (2d Cir.1999) (pronouncing that collateral estop-

pel applies when an identical issue, necessary to support a valid and final judgment on the merits, was actually litigated and actually decided in a prior proceeding after a full and fair opportunity to litigate such issue). Of course, at the trial, the convictions and pleas will be admissible to attack credibility and as admissions. *See* Fed.R.Evid. 609(a)(i) and 801(d)(2).

2. The motion for summary judgment by defendants Michael Shepard and Lawrence Shepard is DENIED.

IT IS SO ORDERED.