Derrick JACKSON, Plaintiff—
Appellant,

v.

COUNTY OF LOS ANGELES, a govern-
mental entity; Sherman Block; Jerry
Harper; Robert Devot; Jerry Hanker-
son; D. Jensen; Philip Geisler, Defen-
dants—Appellees.

No. 00–56402.
D.C. No. CV–97–01274–RC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 2001.

Decided Dec. 26, 2001.

Before BROWNING, REINHARDT and TALLMAN, Circuit Judges.

## MEMORANDUM *

Plaintiff–Appellant Derrick Jackson brought this lawsuit under 42 U.S.C. §§ 1983, 1985(3), alleging that three Los Angeles Deputy Sheriffs violated his civil rights by assaulting him by means of a trained police dog and by beating him. After a two-week jury trial, the district court granted judgment as a matter of law for the defendants on Jackson's § 1985 conspiracy claim, and the jury returned a verdict for the defendants on the § 1983 claim. Jackson now appeals several of the magistrate judge's rulings made before or at trial,[1] as well as the grant of judgment as a matter of law on the conspiracy claim. He also asks that the jury verdict be set aside. We affirm.

*Evidentiary Rulings*

■ Jackson appeals several evidentiary decisions that the magistrate judge made before and during the course of the trial. A district court's evidentiary rulings are reviewed for an abuse of discretion. *See Heyne v. Caruso*, 69 F.3d 1475, 1478 (9th Cir.1995). Even if a district court has abused its discretion in including or excluding evidence, that error will require reversal only if it is prejudicial; that is, reversal is warranted only if it is more probable than not that the jury's verdict was tainted by the error. *Ackley v. Western Conf. of Teamsters*, 958 F.2d 1463, 1470 (9th Cir.1992). We have held that

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by NINTH CIRCUIT RULE 36–3.

1. The parties consented to trial before a magistrate judge, pursuant to 28 U.S.C. § 636(c).

the harmless error standard in the civil context is "far less stringent" than in the criminal context. *Lambert v. Ackerley,* 180 F.3d 997, 1008 n. 11 (9th Cir.1999) (en banc).

 Only the information known to the officers when they apprehended Jackson is relevant to whether the force they used in accosting him was excessive. *See Chew v. Gates,* 27 F.3d 1432, 1443 n. 9 (9th Cir.1994). Thus, the testimony by Patrick, Maria, and Georgina Ford, the victims of a home burglary for which Jackson was convicted, about the details of that crime, would not ordinarily have been admissible.

Here, however, both plaintiff's counsel in his opening statement and plaintiff in his direct examination maintained that plaintiff went to the Fords' house so that his friends could purchase marijuana, and that he had knowledge of neither his associates' possession of weapons (including a sawed-off shotgun) while en route to the Fords' house, nor of their intent to commit a robbery. The defendants were entitled to impeach Jackson's credibility with contrary testimony on this point.

 Some of the Fords' testimony clearly exceeded the bounds of reasonable impeachment; for example, testimony regarding the assault on Patrick Ford by the intruders did not specifically link Jackson to those intruders' actions. Indeed, counsel for the appellees admitted at oral argument that no testimony conclusively placed Jackson inside the Fords' house. Similarly, defense counsel's closing argument improperly alluded to the fear experienced by the Fords during the robbery as evidence that the jury ought to consider as part of the excessive force analysis set forth in *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). For the reasons stated above, these are not relevant considerations in evaluating whether the officers' application

of force was reasonable under the circumstances.

 In some instances, improper testimony and argument of the type at issue would be cause for setting aside a verdict. *See Wilson v. City of Chicago,* 6 F.3d 1233, 1236 (7th Cir.1993) (setting aside a defense verdict in an excessive force case because of the admission of prejudicial details about the crime for which the plaintiff had been apprehended which were unknown to the defendant officers). However, the prejudice resulting from testimony and argument in this case does not rise to the level necessary for reversal. Ample evidence was properly admitted from which the jury could have concluded that the defendants' use of force, though significant, was not excessive. The defendants called into serious question the plaintiff's veracity through many appropriate means of impeachment. Jackson's own testimony contained a number of inconsistencies, if not outright falsehoods, and could well have been discounted by the jury. Moreover, the improper testimony constituted an extremely limited part of a lengthy trial which included detailed and starkly differing accounts of Jackson's encounter with the police and the forensic significance of his wounds. A careful review of the record persuades us that it is more likely than not that the jury's verdict was untainted by the inadmissible evidence and argument.

 Jackson also contests the district court's decision to exclude the testimony of a neighbor of the Fords, Florence Beatty, who would have testified that she did not hear a gunshot that evening. Such testimony would have impeached Georgina Ford's testimony that she heard a gun fired. However, the magistrate judge correctly noted that the only relevance of the gunshot was whether the officers who ap-

prehended Jackson were informed that a gunshot was heard. Additionally, the plaintiff had already impeached Georgina Ford through the introduction of her felony conviction for welfare fraud, as well as her dubious testimony that she was unaware that her husband's principal occupation was selling marijuana. Thus, in light of the more probative impeachment evidence against Ford, and the irrelevance of Beatty's testimony to what the deputies knew when they encountered Jackson, the magistrate judge concluded that the neighbor's testimony was inadmissible. We cannot say that this ruling constituted an abuse of the magistrate judge's discretion.

■ Pursuant to the official records exception to the general prohibition on hearsay, the magistrate judge allowed the introduction into evidence of a report about the events in question which was authored by Sgt. Richard Myers the day after the incident took place. Much of the information contained in that report is hearsay within hearsay, or irrelevant to Jackson's interaction with the deputies. However, plaintiff's counsel called Deputy Myers as part of his case-in-chief, and counsel's direct examination elicited virtually all of the objectionable material in the report. Moreover, the potentially excludable information not elicited by plaintiff's counsel had already been entered into evidence through the Fords' testimony. Thus, although the report may have been excludable under the Rules of Evidence, its admission was not prejudicial error.[2]

■ Appellant also contends that the testimony of Frank Gonzalez was inadmissible and prejudicial. Gonzalez, who lived three doors down from the backyard where Jackson encountered the deputies, testified that his son discovered a sawed-off shotgun in his backyard approximately two months after the events at issue in this case. Defendants justify the admission of this witness's testimony as necessary to rebut plaintiff's allegation that no sawed-off shotgun was used in the robbery, an allegation made by plaintiff's counsel when cross-examining Patrick Ford. Gonzalez's testimony was not particularly relevant in that it did not link Jackson to the shotgun that was retrieved. Thus, its admission was probably erroneous. However, given the brevity of the testimony in contrast to the extensive body of relevant evidence, and the fact that Jackson was not linked to the shotgun, this evidence—both independently and in combination with the Fords' testimony—could not have affected the jury's verdict.

■ Finally, the appellant argues that it was prejudicial error for the magistrate judge to read to the jury portions of the California Court of Appeals decision that affirmed Jackson's criminal sentence. Jackson contends that because his criminal sentence was more than twice as long as those of his co-defendants, the jury might improperly have inferred that he was more culpable than they. Although the reason why the magistrate judge read this portion of the opinion to the jury is unclear to us, it was not prejudicial error. During the cross-examination of Jackson by defense counsel, defense counsel asked Jackson to state the length of the criminal sentences received by each defendant in the criminal case. Plaintiff answered without hesitation, and plaintiff's counsel did not object. Thus, any additional prejudice that

---

2. Appellee contends that because Jackson sought to introduce another report of the evening's events, he should be estopped from challenging the introduction of the Myers report. However, while the other report addressed solely the use of force by the officers, the Myers report contained largely extraneous information. Thus, the admission of the other report has no bearing on the admissibility of the Myers report.

may have been created by the magistrate judge's recitation of those facts is de minimis. We also note that in any event, defense counsel never argued to the jury that Jackson's longer sentence was evidence that he was the most culpable of the three co-defendants.

*Jury Instruction*

■ This court will not reverse a civil judgment "because of a mistake in jury instructions if the instructions fairly and adequately cover the issues presented." *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1337 (9th Cir.1985). Here, Jackson requested that the jury be instructed that the testimony of the Fords and of Frank Gonzalez could not be used to justify the use of force against him. Although this charge would have been correct, and would have made the charge as a whole a more explicit and complete statement of the law, the instructions used by the magistrate judge did "fairly and accurately" state the law applicable to § 1983 excessive force claims. For instance, she did instruct the jurors that they could consider only the perspective of the officers on the scene when evaluating if the officers' use of force was reasonable. Thus, the magistrate judge's decision not to read the requested charge, if error, was "more probably than not harmless" in light of the entire charge. *See Lambert*, 180 F.3d at 1008.

*Racial Conspiracy Claim*

■ The magistrate judge granted defendants' motion for judgment as a matter of law on his claim of racial conspiracy brought pursuant to 42 U.S.C. § 1985. We review this ruling *de novo, see Pierce v. Multnomah Cty.*, 76 F.3d 1032, 1037 (9th Cir.1996), and affirm. A § 1985 claim has four elements, one of which is that a conspiracy must be proven which existed "[f]or the purpose of depriving ... any person ... of the equal protection of the laws." Thus, to state a claim under § 1985(3), a plaintiff must show "some racial[ly] ... invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (footnote omitted); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000).

■ Here, plaintiff, who is African–American, at best established racial animus on the part of only one of the three alleged co-conspirators. Jackson sought to introduce various pieces of evidence that he claimed proved that the officers abused him because of his race. The magistrate judge found the evidence too remote to have any bearing on this case. We are doubtful of the probative value of some of the proffered evidence, but assuming *arguendo* that its exclusion was erroneous, the § 1985(3) claim is still not viable. All the evidence of alleged racial animus, whether admitted into evidence or not, related to Deputy Geisler, one of the three officers on the scene that evening. Plaintiff put forth no evidence at trial as to racial bias on the part of either of the other two officers. He thus cannot establish a conspiracy driven by racial animus, and the district court's grant of judgment as a matter of law to the defendants on this claim was correct.

*Trifurcation of the Trial*

■ The magistrate judge trifurcated this trial: the first stage was to establish whether the deputies were individually liable for their actions under § 1983; the second was to try plaintiff's claims of municipal and supervisory liability; and, assuming that liability was established in the earlier phase(s), the third was to deter-

mine whether punitive damages were warranted.

A district court order to organize a trial into sequential phases may be set aside only for an abuse of discretion. *Davis v. Mason Cty.*, 927 F.2d 1473, 1479 (9th Cir.1991). We have long held that under Fed.R.Civ.P. 42(b), a trial court may separate a trial into liability and damages phases. *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 697 (9th Cir.1977). However, only when each liability phase depends on a distinct theory of liability will severance among liability issues be appropriate. *Larez v. City of Los Angeles*, 946 F.2d 630, 640 (9th Cir.1991). Here, each liability phase did depend on a distinct theory, and plaintiff does not show how he was prejudiced by the severance order. Thus, we affirm the magistrate judge's order to try the case in three stages.

AFFIRMED.