Mark A. BELFAST, Plaintiff,

v.

**UPSILON CHAPTER OF PI KAPPA ALPHA FRATERNITY AT AUBURN UNIVERSITY, et al., Defendants.**

No. CIV.A.02–F–804–E.

United States District Court,
M.D. Alabama,
Eastern Division.

May 28, 2003.

Chris T. Hellums, C. Carter Clay, Pittman Hooks Dutton Kirby & Hellums PC, Birmingham, AL, for Mark A. Belfast, plaintiff.

James R. Seale, Elizabeth B. Carter, Hill, Hill, Carter, Franco, Cole & Black, B. Saxon Main, Ball, Ball, Matthews & Novak, P.A., F. Chadwick Morriss, Philip Keith Lichtman, Rushton, Stakely, Johnston & Garrett, P.A., James R. Seale, Elizabeth B. Carter, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, for PI Kappa Alpha Club of Auburn, Alabama, Paul D. Cunningham, Andrew Jackson, Upsilon Chapter of PI Kappa Alpha Fraternity at Auburn University, defendants.

## MEMORANDUM OPINION AND ORDER

FULLER, District Judge.

This cause is before this Court on three separate motions to dismiss filed by Defendants Andrew Jackson on August 28, 2002 (Doc. # 10); Paul D. Cunningham on October 1, 2002 (Doc. # 19); and the Upsilon Chapter of Pi Kappa Alpha Fraternity at Auburn University on January 31, 2003 (Doc. # 38). These motions have been fully briefed. No oral argument was held. After careful consideration of the relevant law and the record as a whole, the Court concludes that the motions to dismiss are due to be DENIED in part, and GRANTED in part.

Andrew Jackson's Motion to Dismiss is DENIED.

Paul D. Cunningham's Motion to Dismiss is DENIED.

The Motion to Dismiss of the Upsilon Chapter of Pi Kappa Alpha Fraternity at Auburn University is GRANTED with respect to dismissing Plaintiff's 42 U.S.C. § 1985(3) claim (i.e., Count 3) against the Chapter, and with respect to dismissing any claims against any Defendant arising under 42 U.S.C. § 1982 (Count 2), arising under the Equal Protection Clause of the United States Constitution, or arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

In all other respects, the Upsilon Chapter's Motion to Dismiss is DENIED.

## I. PROCEDURAL HISTORY

The Plaintiff filed his Complaint (Doc. # 1) on July 15, 2002. Originally the Complaint brought causes of action against Jackson, Cunningham, and the Pi Kappa Alpha Club of Auburn. In response to information produced by Defendants in their initial pleadings, memoranda, and other filings, Plaintiff amended his Complaint (Doc. # 27) and substituted the Upsilon Chapter of Pi Kappa Alpha Fraternity at Auburn University (hereinafter "Upsilon Chapter") for the Pi Kappa Alpha Club of Auburn, Alabama. This substitution was approved by the Court (Doc. # 31). Originally the Complaint brought three federal and four state causes of action. The causes of action based upon federal law alleged violations of 42 U.S.C. § 1981 (Count 1); 42 U.S.C. § 1982 (Count 2); and 42 U.S.C. § 1985(3) (Count 3).[1] Each of the three federal counts also

---

1. Within Counts 1, 2, and 3, Plaintiff Belfast also asserted that Defendants' actions violated Plaintiff's rights under the Equal Protection Clause. It is unclear if Plaintiff meant, even

alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. And, each federal cause of action was brought against each Defendant.[2] The causes of action based upon state law included assault and battery (Count 4); tort of outrage (Count 5); willfulness, wantonness and/or negligence (Count 6); and negligent supervision and control (Count 7). Counts 4 and 5 are brought exclusively against the individual Defendants, Jackson and Cunningham. Count 6 is brought against all Defendants under a theory that the Upsilon Chapter is vicariously liable for the actions of the individual Defendants. Count 7 is brought exclusively against the Upsilon Chapter. Count 2 and any cause of action arising from Title VII were voluntarily abandoned by the Plaintiff—albeit without any formal amendment of his Complaint. The only federal claims that remain are 42 U.S.C. § 1981 (Count 1) and 42 U.S.C. § 1985(3) (Count 3). *See infra* note 1.

Each Defendant has moved for dismissal of the Complaint (Docs. # 10, # 19, and # 38).[3] Each Defendant has brought a motion under Fed.R.Civ.P. 12(b)(6) taking the position that the Plaintiff has failed to state a claim with regard to both of the two remaining federal causes of action (Counts 1 and 3). *See infra* note 4. And, concomitantly, Defendants have argued that because a viable federal cause of action is lacking, this Court lacks subject matter jurisdiction to adjudicate the remaining causes of action grounded in Alabama law.

## II. *MOTION TO DISMISS STANDARDS*

As stated above, each Defendant has made a 12(b)(6) motion for failure to state a federal claim for which relief can be granted.[4] Such a motion tests the Complaint's legal sufficiency. "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (Black, J.); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986) (per curiam) (same). "In reviewing the complaint, we accept all well-pleaded factual allegations as true and construe the facts in the light most favorable to the

---

at that time, to support a cause of action directly arising under the Equal Protection Clause. In any event, in a subsequent memorandum, Plaintiff has rejected any such position. *See* Mark A. Belfast's Memorandum Brief in Opposition to the Motion to Dismiss filed by Upsilon Chapter of Pi Kappa Alpha Fraternity at Auburn University at 3 (Plaintiff has "abandoned all federal law-based causes of action except for claims predicated on 42 U.S.C. § 1985(3) and 42 U.S.C. § 1981.") (bold omitted) (Doc. # 43).

**2.** The Plaintiff argues that this Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(1)-(4). The Court agrees.

**3.** Defendants briefs in support of their motions to dismiss can be found at: Doc. # 11 (Jackson); Doc. # 16 (Jackson) (supplemental); Doc. # 14 (Pi Kappa Alpha Club of Auburn, Alabama) (brief of a Defendant dismissed from case); Doc. # 42 (Cunningham); Doc. # 41 (Upsilon Chapter); Doc. # 47 (Upsilon Chapter) (reply brief).

**4.** Fed.R.Civ.P. 12(b)(6) is specifically referenced by Defendants Jackson and Cunningham's motions to dismiss (Docs. # 10 and # 19). However, the Upsilon Chapter's motion to dismiss (Doc. # 38) is brought generically under Rule 12(b). The Court assumes that the Upsilon Chapter's position is consistent with its co-defendants. The Defendants' briefs sometimes indicate that the individual motions are brought both under 12(b)(6) and 12(b)(1) (lack of jurisdiction over the subject matter), but no arguments were presented with specific reference to 12(b)(1).

plaintiff." *Maggio v. Sipple,* 211 F.3d 1346, 1350 (11th Cir.2000) (Hull, J.); *Romero v. City of Clanton,* 220 F.Supp.2d 1313, 1315 (M.D.Ala.2002) (Albritton, C.J.) (same). Thus, "[t]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is ... 'exceedingly low.'" *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (Clark, J.) (quoting *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp., S.A.,* 711 F.2d 989, 995 (11th Cir.1983) (Hill, J.)).

## III. *FACTS BASED UPON MATERIALS PRESENTED BY THE PARTIES*

The following is a brief summary of the relevant facts, accepting Belfast's well-pleaded factual allegations as true and construing them in a light most favorable to him.

According to the Plaintiff's Complaint, the Upsilon Chapter is a non-profit corporation organized under the laws of Alabama. The corporate status of the Chapter is disputed by the Chapter. The exact status of the Chapter can be determined in a later stage of this litigation. And in any event, nothing in this opinion turns on the corporate status of the Chapter. The individual Defendants, Cunningham and Jackson, are both *Caucasian* [5] male citizens of the United States, both reside in Alabama, both are over the age of nineteen, and both are members of the Upsilon Chapter.

Mark Belfast is an African–American male residing in Alabama. He is over nineteen years old. Belfast was employed by Papa John's Pizza. Papa John's pro-

vided service to the campus of Auburn University. On April 6, 2001, Belfast was making a delivery of Papa John's food to the Upsilon Chapter. Upon arrival, Jackson poured beer on Belfast's car. Thereafter the individual Defendants cooperated with one another in physically attacking Belfast. In consequence of this attack, Belfast suffered substantial physical injuries (some of which are permanent and/or disfiguring), endured pain and suffering (including emotional and mental distress), incurred medical (and legal) bills, lost past and future wages—including future diminished earning capacity. Prior to this incident, Cunningham had already verbally assaulted Belfast on another occasion ostensibly for delivering pizza to the wrong address and that both incidents were a result of racial animus. The Upsilon Chapter knew of (or should have known of) both the prior incident and it knew of (or should have known of) other similar incidents.

## IV. *DISCUSSION*

Plaintiff has brought causes of action grounded in federal and state law. Defendants have moved to dismiss the federal claims under Fed.R.Civ.P. 12(b)(6). Defendants have also, correctly, argued that in the absence of a viable federal claim, this Court lacks jurisdiction to hear the state law claims. The Court will examine each one of these contentions in turn.

### 1. Federal Claims

Plaintiff brings a cause of action alleging that Defendants violated his rights under 42 U.S.C. § 1981(a) (2003):

---

**5.** Oddly, the (apparent) fact that both individual Defendants are Caucasian does not appear in Plaintiff's Complaint. *But see* Pi Kappa Alpha Club of Auburn, Alabama's Brief in Support of its Motion to Dismiss at 4 ("the individual defendants are Caucasian") (Doc.

# 14); Upsilon Chapter of Pi Kappa Alpha Fraternity at Auburn University's Brief in Support of its Motion to Dismiss at 4 (Doc. # 41) (same). However, nothing in this opinion hinges on determining the race of the individual Defendants.

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The current statute is devolved from the Civil Rights Act of April 9, 1866, c. 31, 14 Stat. 27 (1866). And, it has remained substantially unchanged—at least until the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (Nov. 21, 1991). In interpreting the statutory language, *supra*, the Supreme Court has held:

> By its plain terms, the relevant provision in § 1981 protects two rights: "the same right ... to make ... contracts" and "the same right ... to ... enforce contracts." The first of these protections extends only to the formation of a contract, *but not to problems that may arise later from the conditions of continuing employment....* [P]ostformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continu-

ing employment, matters more naturally governed by state contract law and Title VII.

. . . . .

> The second of these guarantees, "the same right ... to ... enforce contracts ... as is enjoyed by white citizens," embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race. In this respect, it prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, and this is so whether this discrimination is attributed to a statute or simply to existing practices.

*Patterson v. McLean Credit Union,* 491 U.S. 164, 176–77, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (Kennedy, J.) (emphasis added).

In the instant case, Plaintiff has not argued that his access to the legal process or his right to enforce a contract to which he is a party has been denied on account of race. Instead, Plaintiff has alleged in his Complaint that the assault and battery allegedly committed by the Defendants: (i) interfered with his right to make a contract of sale with a Papa John's customer to whom he was making a yet uncompleted delivery; and (ii) interfered with his meeting his contractual obligations and duties owed his employer.[6] Compl. ¶¶ 10, 18.[7]

---

**6.** Plaintiff's contractual obligations to his employer would have been implicated had he failed to complete the sale of food. Alternatively, even if Plaintiff was injured *after* completing the sale, had Plaintiff's injuries rendered him unable to return to work to perform other duties, including making further deliveries, then his contractual obligations to his employer would have been equally implicated. In either event, whether the sale of food was completed or not, the Complaint expressly asserts allegations that Plaintiff's injuries left him unable to perform some of his duties owed to his employer under the employment contract. Compl. ¶ 18.

**7.** Although Plaintiff's Complaint was not a model of clarity, Plaintiff's Complaint put De-

fendants on sufficient notice that the Defendants' alleged assault interfered with two contracts: (i) a contract for the delivery and sale of food between Papa John's and some unnamed customer; and (ii) an employment contract between Papa John's and the Plaintiff. Compl. ¶ 18; *cf. also* Mark A. Belfast's Memorandum Brief in Response to the Recently Filed Brief in Support of Motion to Dismiss by Defendant Paul D. Cunningham at 2–3 ("The underlying assault allegedly occurred while Mark Belfast was in the process of completing a commercial transaction .... [D]efendants interfered with Mark Belfast's ability to perform a contractual obligation.").

Defendants dispute Plaintiff's factual contention and instead argue that Plaintiff's Complaint indicates that the food delivery was actually made and completed so that no contract for the sale of food was interfered with. (Doc. # 40 at ¶ 18; Doc. # 41 at ¶ B; Doc. # 42 at ¶ A; Doc. # 47 at ¶ A.) Moreover, Defendants argue that any alleged interference with Plaintiff's completing this particular sale wholly relates to postformation employment contract conditions or performance, and therefore, as a matter of law, is not actionable. *See, e.g.,* Doc. # 42 at ¶ A; *Patterson* at 176–77, 109 S.Ct. 2363.

With regard to the allegedly uncompleted contract for the sale of food, Plaintiff would not have been a party to that contract. The parties to that contract would have been Papa Johns (Plaintiff's employer) and the would-be customer. Whether or not an agent of a party to a contract can be said "to make" a contract as required by 42 U.S.C. § 1981 presents an interesting question of law. But it is not a question the Court must resolve because the Court is persuaded that Plaintiff's Complaint can be sustained with respect to the second contract, the employment contract. As explained above, *Patterson,* a decision of the United States Supreme Court, held that postformation contract conditions or performance is, or rather was, not actionable under 42 U.S.C. § 1981. *Patterson* was decided in 1989. As explained above, in 1991 Congress amended 42 U.S.C. § 1981 by adding new language expanding the reach of the statute. Civil Rights Act of 1991 § 3, Pub.L. No. 102–166, 105 Stat. 1071 (Nov. 21, 1991) ("The purpose[ ] of this Act [is] to respond to recent decisions of the Supreme Court by *expanding the scope* of relevant civil rights statutes in order to provide adequate protection to victims of discrimination.") (emphasis added). The statute now includes the following language:

For purposes of this section, the term "make and enforce contracts" includes the making, *performance,* modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(b) (2003) (emphasis added).

■■■ In short, *Patterson* is no longer controlling law because it has been superseded by a more recent statute. *See Jones v. Firestone Tire and Rubber,Co., Inc.,* 977 F.2d 527, 534 n. 8 (11th Cir.1992) (Tjoflat, C.J.). Moreover, just as *Patterson* is no longer controlling law, the bulk of the case law put forward by the parties in their briefing is not persuasive because those cases predate the 1991 amendments. *See, e.g., Croy v. Skinner,* 410 F.Supp. 117, 125 (N.D.Ga.1976). Plaintiff's employment contract is a contract for the purposes of this statute. Plaintiff's postformation performance under the employment contract is protected under the statute as amended. *See Rogers v. Elliott,* 135 F.Supp.2d 1312, 1314 (N.D.Ga.2001) (Pannell, J.) (including "performance" as protected activity). Moreover in a § 1981 case, Plaintiff is free to seek his remedy against the counterparty to the contract or against a third-party interferer. *See, e.g., Faraca v. Clements,* 506 F.2d 956, 959 (5th Cir.1975) (Clark, J.) ("a third party's interference with those rights guaranteed under Section[ ] 1981 … will subject such a person to personal liability"); *see also Vakharia v. Swedish Covenant Hosp.,* 765 F.Supp. 461, 471 (N.D.Ill.1991) ("relationship between the plaintiff and the third party-interferer is irrelevant") (decided prior to Civil Rights Act of 1991).

■■■ Plaintiff alleges that the attack was motivated by racial animus. Compl. ¶ 15. Defendants contend that Plaintiff's federal claims are insufficiently supported with factual allegations supporting racial

animus as a motive and further contend that the bare bones statements in the Complaint alleging racial animus as the motive for the alleged attack are facially insufficient as a matter of law. (Doc. # 47 at 3–4.) Defendants' position is not well taken.[8] Not every attacker motivated by racial animus expresses the reason for his attack at the time of the battery. *But cf. Walker v. Shepard,* 107 F.Supp.2d 183 (N.D.N.Y.2000). Thus the absence of detailed factual allegations with regard to the confrontation is not conclusive that race was not a motivating fact. Plaintiff must have an opportunity to develop supporting facts through discovery. Nor do we expect plaintiffs to engage in extensive background checks of defendants prior to discovery in order to uncover material facts that might better support the allegations in their complaint. Such evidentiary development comes after the first round of dispositive motions, not before. In short, if a member of a minority group is at-

tacked, without provocation, and the attackers cooperate, it is reasonable to infer and a plaintiff can properly allege—without any other supporting proof—that the attack was racially motivated. At a later stage of this litigation, Defendants are, of course, free to establish by affidavit or other competent evidence that: (i) there was no attack; or (ii) that the "attack" was provoked; or (iii) that the attackers did not act cooperatively or on the basis of some prior agreement; or (iv) that even if Defendants engaged in an unprovoked attack in conformity with some prior agreement, the attack itself was animated by nonracial motives. But at this stage, particularly because factual information relating to motive and purpose is peculiarly in the hands (and minds) of the Defendants, Plaintiff cannot be expected to do more than allege racial motivation or bias.

Defendants further argue that the allegation of racial bias is contradicted by

---

**8.** Defendants note that the district court in *Walker v. Shepard,* 107 F.Supp.2d 183 (N.D.N.Y.2000), upheld the plaintiff's § 1985(3) claim. Nevertheless Defendants seek to rely on this case by distinguishing it from the instant litigation. Defendants argue that *Walker* is distinguishable from the instant litigation because the *Walker* plaintiff produced "substantial evidence" of a conspiracy motivated by race. The Defendants are partly correct. *Walker* is distinguishable from the instant litigation because it was a decision on a motion for summary judgment; a case in such a posture imposes a burden on the plaintiff to produce facts supporting every element of his claim. In this litigation, at the motion to dismiss stage, no such burden falls on the Plaintiff; Plaintiff's well-pleaded allegations are sufficient to survive a motion to dismiss. Another decision cited by the Chapter, *Jackson v. County of Los Angeles,* 29 Fed.Appx. 430, 2001 WL 1667801 (9th Cir.2001) (unpublished disposition), was an appeal following a full trial below—procedurally well passed both the summary judgment and motion to dismiss stages. Again, *Gray v. City of Eufaula,* 31 F.Supp.2d 957 (M.D.Ala.1998) (DeMent, J.), cited by Defendants, is not on-point

because it was a decision on a motion for summary judgment. The same can be said for countless other cases cited by Defendants, including: *Brown v. Masonry Prods., Inc.,* 874 F.2d 1476 (11th Cir.1989); *Cartwright v. Tacala, Inc.,* Civ. A. No. 99–00663, 2000 WL 33287445 (M.D.Ala., Nov. 1, 2000) (Walker, M.J.); etc. Thus the Plaintiff has the right to avail himself of an opportunity to produce evidence *after* discovery supporting his yet unproven allegations of racial animus. *See also Harry v. Marchant,* 237 F.3d 1315 (11th Cir.) ("Indeed, the amended complaint *alleges* that (1) Normil was a member of a racial minority, (2) Appellees *intended to discriminate* based on Normil's race, and (3) the discrimination concerned an alleged contractual obligation. Therefore, we reverse the district court's ruling dismissing this claim.") (emphasis added), *vacated en banc,* 259 F.3d 1310 (11th Cir.2001), *reinstated en banc,* 291 F.3d 767 (11th Cir.2002); *Hughes v. Ranger,* 467 F.2d 6, 10 (4th Cir.1972) (granting motion to dismiss in a § 1985(3) action where "the plaintiffs make no allegations [in their complaint] of any class-based motivation on the part of the defendants").

other factual allegations in the Complaint. (Doc. # 47 at 3–4.) Defendants note that the alleged assault occurred after a prior incident at least in part caused by Plaintiff's misdelivery of some pizza. Specifically, Defendant Upsilon Chapter argues that the verbal confrontation between Defendant Cunningham and the Plaintiff in the prior incident fully explains the alleged attack that is the subject matter of this litigation without recourse to any theory of racial bias. *Id.* Defendant's position is not well taken. It is not contradictory to assert that the disputed incident can have more than one motive—which is precisely what Plaintiff alleges in his Complaint. Compl. ¶ 12 (prior incident caused by misdelivery of pizza and racial bias). Contrary to Defendant's statement, the claim of "mis-delivered pizza [does not] negate[ ] racial animus as a reason." (Doc. # 47 at 4.)

 In addition to Plaintiff's 42 U.S.C. § 1981 claim, Plaintiff has also brought a claim against all Defendants for violating his rights under 42 U.S.C. § 1985(3).[9] This statute makes it illegal to participate in a conspiracy to deny a third-party his or her civil rights. Defendants have to all intents and purposes made identical arguments with respect to both Plaintiff's § 1981 and § 1985(3) causes of action. As explained above, Defendants have argued that Plaintiff's general allegation of racial animus based upon an alleged attack is insufficient to withstand a motion to dismiss. The Court has already rejected Defendants' argument with regard to Plaintiff's § 1981 claim. For the same reasons, this Court also rejects Defendants' argument with regard to Plaintiff's § 1985(3) claim. Under the circumstances of this case and at this stage of the litigation, Plaintiff's having made a good faith allegation of racial animus will withstand a motion to dismiss.

Additionally, the Upsilon Chapter has argued that Plaintiff's § 1985(3) claim must fail because "there is no allegation of racial animus or a conspiracy based on racial animus with regards *to the Chapter.*" (Doc. # 41 at 4) (emphasis added). Defendant's point is well taken. The Complaint alleges the existence of a conspiracy, but it does not allege that the Chapter was a member of that conspiracy. It does not allege a meeting of the minds between the Chapter (or its officers and agents) and any other individual Defendant, nor does it allege that the Chapter acted in concert with any other individual Defendant.

 Under the first § 1985(3) element, a plaintiff must show "an agreement

9. 42 U.S.C. § 1985(3) (2003) provides: "[i]f two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

between the members of the alleged conspiracy." *Godby v. Montgomery County Bd. of Educ.*, 996 F.Supp. 1390, 1412 (M.D.Ala.1998) [ (Albritton, C.J.) ]. As explained in *Godby*, "[a]lthough the existence of a conspiracy may be supported by circumstantial evidence, there must be some indication that the individuals were acting, in some sense, in concert." *Id.* "Where there is no indication of an agreement to act against the . . . rights of an individual there is no cause of action under § 1985." *Id. Campbell v. Civil Air Patrol*, 131 F.Supp.2d 1303, 1315 (M.D.Ala.2001) (DeMent, J.). In the instant litigation, there is nothing for Plaintiff to show with regard to the Chapter's participating in the conspiracy because its participation in the conspiracy has not even been alleged in the Complaint. This shortcoming is fatal to Plaintiff's § 1985(3) claim against the Chapter.[10] At most, the Complaint alleges that the Chapter had knowledge of the propensities and actions of the individual Defendants.[11] And knowledge is not sufficient. *Id.* at 1316 ("Furthermore, assuming for the sake of argument that Parkhurst had knowledge of the 'no talk' directive and the firing decisions, such knowledge or even acquiescence is not tantamount to an agreement.").

■ The Upsilon Chapter stated in it Motion to Dismiss that venue was improper. (Doc. # 38) However no argument was forthcoming in its brief on this point of law. Therefore the Court will not address the issue of venue. (Doc. # 41) Additionally the Chapter has argued that Plaintiff's claims arising under 42 U.S.C. § 1982 (Count 2), arising under the Equal Protection Clause of the United States Constitution, and arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. are without merit. Plaintiff has expressly abandoned these claims. *See supra* note 1. It will be so ordered.

### 2. State Claims

■ Defendants have argued that this Court lacks supplemental jurisdiction over the counts grounded in Alabama law because the Court lacks jurisdiction over any viable federal claim. The Court has already rejected Defendants' position with regard to the viability (at this stage) of Plaintiff's federal claims. Furthermore, the Defendants in their motions to dismiss have made no free-standing arguments against the facial sufficiency of the state law claims. The Upsilon Chapter in a *reply* brief did discuss Alabama state case law, but this discussion was wholly in the context of addressing the sufficiency of Plaintiff's § 1985(3) claims. (Doc. # 47 at 3–6.) Nowhere have the Defendants asked this Court to apply those arguments (or any other arguments) to test the legal sufficiency of the state law claims. Moreover, the Court will not address arguments made for the first time in a reply brief. *See, e.g., Tallahassee Memorial Regional Medical Center v. Bowen*, 815 F.2d 1435,

---

10. Defendant Jackson has not incorporated by reference the arguments or briefs put forward by the Upsilon Chapter. But Defendant Cunningham has. The Complaint, however, alleged that the individual Defendants cooperated during the alleged unprovoked attack on the Plaintiff. Compl. ¶ 10. And the Complaint alleged that this conduct was in furtherance of a conspiracy. *Id.* at ¶ 25. This puts the individual Defendants on sufficient notice that Plaintiff has alleged that they were members of the alleged conspiracy.

11. Similarly Plaintiff's Memorandum Brief in Opposition to the Motion to Dismiss Filed by Upsilon Chapter nowhere specifically alleges that the Chapter conspired with any individual Defendant or Defendants to deprive Plaintiff of any right. Moreover, in discussing a state law claim, albeit not the § 1985(3) claim discussed here, Plaintiff took the position that the Chapter merely "authorized or encouraged" the actions of the individual Defendants. (Doc. # 43 at 15.) No agreement was alleged.

1446 n. 16 (11th Cir.1987) (Clark, J.) ("It is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief.") (citing *United States v. Oakley,* 744 F.2d 1553, 1556 (11th Cir.1984) (per curiam)).

Because Plaintiff's federal claims survive Defendants' motions to dismiss, the Court has supplemental jurisdiction to hear each and every state law cause of action. (Counts 4–7) In summary judgment motions following discovery, Defendants may bring up such arguments as they think proper to test the legal sufficiency of the state law claims—*if such arguments have not already been waived.*

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

Andrew Jackson's Motion to Dismiss is DENIED.

Paul D. Cunningham's Motion to Dismiss is DENIED.

The Motion to Dismiss of the Upsilon Chapter of Pi Kappa Alpha Fraternity at Auburn University is GRANTED with respect to dismissing Plaintiff's 42 U.S.C. § 1985(3) claim (i.e., Count 3) against the Chapter, and with respect to dismissing any claims against any Defendant arising under 42 U.S.C. § 1982 (Count 2), arising under the Equal Protection Clause of the United States Constitution, or arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

In all other respects, the Upsilon Chapter's Motion to Dismiss is DENIED. A separate Order will be entered in accordance with this Memorandum Opinion.